933 A.2d 57

**COMMONWEALTH**

v.

**Christopher HOLMES, Appellant.**

**Commonwealth of Pennsylvania, Appellant,**

v.

**Rufus Whitfield, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 2004.

Resubmitted Nov. 21, 2006.

Decided Oct. 16, 2007.

602

604

Ellen T. Greenlee, Karl Baker, Jeffrey Paul Shender, Philadelphia, for Christopher Holmes.

Jason E. Fetterman, Hugh J. Burns, Philadelphia, for Commonwealth of Pennsylvania.

Mark Patrick Cichowicz, Karl Baker, Philadelphia, for Rufus Whitfield.

CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN, FITZGERALD, JJ.

## OPINION

Justice BAER.[1]

We granted review in these two cases to consider the interaction between a statute limiting the period of time during which a trial court may modify or rescind an order [2] and the long-standing, inherent power of courts to correct patent errors in orders. *See Commonwealth v. Cole*, 437 Pa. 288, 263 A.2d 339 (1970). The two cases under review herein demonstrate a conflict in the application of authorities when trial courts attempt to exercise their inherent power to correct orders by vacating illegal sentences despite the expiration of the modification period provided by 42 Pa.C.S. § 5505. Because in both of these cases the errors in question were patent, we determine that the trial courts had jurisdiction to correct the sentences. Accordingly, we reverse the Superior Court's decision in *Commonwealth v. Holmes*, 837 A.2d 501 (Pa.Super.2003), which reversed the trial court's order vacating its sentence, and affirm the Superior Court's decision in *Commonwealth v. Whitfield*, 3194 EDA 2002 (Pa.Super.2003), affirming the trial court's order vacating its sentence.

1. This case was reassigned to this author.

2. § 5505. Modification of orders

Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.
42 Pa.C.S. § 5505.

■  We first consider the facts relating to appellant Christopher Homes, 22 EAP 2004, as gleaned from the record developed in the trial court at CP# 9603–1287 2/2.  On May 17, 1996, Holmes pleaded guilty to criminal conspiracy and a violation of the Controlled Substances Act.  He was sentenced to time served[3] to twenty-three months of incarceration, with immediate parole, followed by two years of reporting probation for the controlled substance offense and no additional sentence for the conspiracy offense.  On September 16, 1997, his probation, but not his parole, was revoked and he was sentenced to eleven and one-half to twenty-three months of incarceration for a probation violation.[4, 5]

The record reveals that at some point prior to October 1998 Holmes again was released on parole and eventually pleaded guilty and was sentenced on charges unrelated to the crimes

3.  The record reveals that Holmes received credit for time served from February 27, 1996, to May 17, 1996.

4.  The record does not clarify why the trial court revoked Holmes's probation rather than the parole from the original sentence of May 17, 1996.  However, there is no dispute regarding the fact that the September 16, 1997 sentence was imposed for a probation violation.

5.  The difference between these often confused terms is crucial to the cases at bar.  As commonly defined, probation is "[a] sentence imposed for commission of crime whereby a convicted criminal offender is released into the community under the supervision of a probation officer in lieu of incarceration."  BLACK'S LAW DICTIONARY, 835 (6th ed.1991).  Conversely, parole is the "[r]elease from jail, prison or other confinement after actually serving part of the sentence.  Conditional release from imprisonment which entitles parolee to serve remainder of his term outside the confines of an institution, if he satisfactorily complies with all terms and conditions provided in parole order."  Id. at 770.  As is relevant, a court faced with a violation of probation may impose a new sentence so long as it is within the sentencing alternatives available at the time of the original sentence.  42 Pa.C.S. § 9771(b) ("Upon revocation [of probation] the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.").  In contrast, a court faced with a parole violation must recommit the parolee to serve the remainder of the original sentence of imprisonment, from which the prisoner could be reparoled.  See Commonwealth v. Fair, 345 Pa.Super. 61, 497 A.2d 643, 645 (1985) ("The power of the court after a finding of violation of parole in cases not under the control of the State Board of Parole is 'to recommit to jail . . . .' There is no authority for giving a new sentence with a minimum and maximum." (internal citation omitted)).

leading to the May 17, 1996 guilty plea. As a result of these new convictions, the trial court, on May 21, 2001, revoked Holmes's parole from the September 16, 1997 sentence of incarceration imposed for the violation of the probationary sentence imposed on May 17, 1996, concluding that Holmes had violated his parole "in re sentence of 9–16–97." Rather than recommitting Holmes to serve the remainder of the sentence imposed on September 16, 1997, as would be proper for a parole violation, see, supra, at 59 n. 5, the court sentenced Holmes as if he had violated probation, imposing a new sentence of three to six years of incarceration to run concurrently with any other current sentence for unrelated crimes. Notwithstanding its impropriety, Holmes did not appeal this sentence. On April 9, 2002, the trial court sua sponte vacated the sentence imposed on May 21, 2001, presumably realizing that the parole violation sentence imposing three to six years of incarceration was improper because it set a minimum sentence and because its maximum exceeded the eleven and one-half to twenty-three month sentence Holmes received when sentenced for the original probation violation on September 16, 1997.[6]

▮ On May 9, 2002, the Commonwealth appealed the court's April 9, 2002 order, claiming that the trial court lacked jurisdiction to vacate its prior sentence.[7] The Superior Court agreed in a published decision. Commonwealth v. Holmes,

6. The record does not reveal the trial court's specific reasoning for vacation of its prior decision. The signed order of April 9, 2002, merely stated: "it is hereby ORDERED that the illegal sentence of 3 to 6 years imposed on May 21, 2001, on the above Bill and Term Number(s) is VACATED, and the Court's supervision is terminated." It is apparent, however, that the illegality hinged on the court's imposition of an unauthorized sentence for the parole violation.

7. The Commonwealth currently alleges that the trial court failed to provide the Commonwealth with notice of its intent to enter the April 2002 order vacating the May 21, 2001 sentence. However, because the Commonwealth did not raise that issue before the Superior Court, we will not address it at this stage of the appellate process. See Commonwealth v. Holmes, 837 A.2d 501, 502 (Pa.Super.2003) ("The Commonwealth has taken the instant appeal from the April 9, 2002 order, raising the single issue: 'Was the lower court's ex parte order purporting to vacate defendant's sentence entered without jurisdiction?' ").

837 A.2d 501, 502 (Pa.Super.2003). The court first noted that the trial court's action could not be justified as a reaction to a post-sentence motion because Holmes had not filed a post-sentence motion. The court next concluded that because the vacation of the sentence occurred more than thirty days after the imposition of the sentence on May 21, 2001, the trial court's action was impermissible under 42 Pa.C.S. § 5505, *see, supra,* at 58 n. 2, which allows a trial court to modify or rescind an order within thirty days of entry of that order, unless an appeal has been taken removing the case from the trial court's jurisdiction.

While acknowledging that challenges to the legality of a sentence cannot be waived and that a court may raise sentence illegality *sua sponte,* the Superior Court cautioned that a trial court must first have jurisdiction to address the illegality, quoting our decisions in *Robinson v. Commonwealth of Pennsylvania Board of Probation and Parole,* 525 Pa. 505, 582 A.2d 857, 860 (1990) ("Jurisdiction is the predicate upon which a consideration of the merits must rest."), and *Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214, 223 (1999) ("Although legality of sentence is always subject to review within the PCRA, claims must still first satisfy the PCRA's time limits or one of the exceptions thereto.").

The Superior Court rejected Holmes's argument that the trial court had inherent jurisdiction to correct patent and obvious errors in orders, distinguishing our decision in *Commonwealth v. Jones,* 520 Pa. 385, 554 A.2d 50 (1989), in which this Court approved a trial court's correction of an illegal sentence the day it was imposed.[8] The Superior Court also

---

8. The issue in *Jones* was whether an illegal sentence could be increased after a defendant has begun serving it or whether such action violated the double jeopardy clauses of the United States and Pennsylvania Constitutions. *Jones,* 554 A.2d at 52. The sentencing error involved the imposition of a minimum term in excess of half the maximum term, in violation of 42 Pa.C.S. § 9756(b). The court realized the illegality of the sentence within hours of the original sentencing and increased the maximum sentence, out of the presence of the defendant, to comply with Section 9756. The next day the trial court called the defendant into court to inform him that the sentences imposed orally had been corrected. This Court concluded that its actions did not violate the

distinguished *Cole*, 263 A.2d 339, in which this Court approved of the trial court's correction of an order over three months after its entry, because the order was internally inconsistent.[9] The Superior Court concluded that the order sentencing Holmes was neither "facially self-contradictory or irreconcilable nor did it contain a clerical error." *Holmes*, 837 A.2d at 504. Accordingly, finding no jurisdiction for the trial court's order vacating the May 21, 2001 illegal sentence, the Superior Court reversed the order and reinstated that sentence.

Holmes sought this Court's review, which we granted.[10] Holmes relies on this Court's statement that "[t]rial courts never relinquish their jurisdiction to correct an illegal sentence." Brief for Holmes at 5 (quoting *Commonwealth v. Vasquez*, 560 Pa. 381, 744 A.2d 1280, 1284 (2000)).[11] He notes that while a violation of probation may trigger a new sentence, a violation of parole, as in the instant case, subjects a parolee to serve the balance of the original sentence. *Compare* 42 Pa.C.S. § 9771 ("Upon revocation [of probation] the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing . . . .") *with Fair*, 497 A.2d at 645 (noting that trial courts are bound by the limits of the original sentence in sentencing for a violation

double jeopardy clauses. We note that the court's action was clearly taken within the thirty-day window created by 42 Pa.C.S. § 5505. Thus, *Jones* is not helpful in disposing of the cases before us.

9. As discussed in detail *infra*, the original order in *Cole* provided for both the "grant of a new trial" and the "arrest of judgment," which we determined to be "so clearly antagonistic that even the most casual reading of the order would disclose the irreconcilable nature thereof." *Cole*, 263 A.2d at 341. The trial court amended the order to delete the grant of arrest of judgment. This Court approved the trial court's actions, holding that even after the enactment of the predecessor to Section 5505, "a court retains its inherent power to correct any patent mistakes in its orders." *Id.*

10. In the interim, Holmes filed a petition for post-conviction relief. The trial court dismissed it in October 2004 because post-conviction actions must await resolution of the appeal pending before this Court.

11. In *Vasquez*, we considered whether a trial court had authority to add to a sentence a mandatory fine it had initially neglected to impose. *Vasquez* is distinguishable because it addressed trial court actions upon remand by the Superior Court, when the trial court's jurisdiction was without question.

of parole); *Commonwealth v. Ware,* 737 A.2d 251, 253 (Pa.Super.1999) ("[U]pon revocation of parole, the only sentencing option available is recommitment to serve the balance of the term initially imposed.").

Initially, Holmes demonstrates that the sentence imposed could not be for a violation of probation because the trial court, in September 1997, revoked the probation imposed in May 1996. Thus, he could not have violated something that no longer existed. Consequently, he argues that the violation found in May 2001 related to his parole from the eleven and one-half to twenty-three-month sentence of incarceration imposed in September 1997. Accordingly, any sentence for that violation must be limited by the duration of the September 1997 sentence, twenty-three months. Citing *Cole* and *Jones,* Holmes contends that the trial court acted within its power to correct the obvious and patent mistake of sentencing him in excess of the original twenty-three-month sentence of September 1997 rather than recommitting him to serve the remainder of that sentence. Holmes also suggests that all illegal sentences are obvious and patent mistakes, citing numerous Superior Court cases for broad statements regarding courts' power to address illegal sentences.

The Commonwealth responds that the Superior Court properly reversed the trial court. It contends that the trial court lost jurisdiction to correct the order when the thirty-day period set forth in Section 5505 expired in June 2001. It notes the distinction between the issue of waiver and jurisdiction, quoting our explanation of jurisdiction as "the power, right, or authority to interpret and apply the law." Brief for Commonwealth (Holmes) at 12 (quoting *Commonwealth v. Johnson,* 542 Pa. 568, 669 A.2d 315, 321 (1995)). While acknowledging that a claim of sentence illegality may never be waived and may be addressed by a court *sua sponte,* it argues that the court must first have jurisdiction over the case to address the issue. Citing this Court's decision in *Fahy,* the Commonwealth contends that the only method for the trial court to have obtained jurisdiction to correct the sentence after the running of the thirty days would have been pursuant to the

PCRA, which Holmes had not invoked as of April 2002, when the trial court vacated the sentence.

While tacitly acknowledging the authority of courts to correct clerical errors in orders, the Commonwealth contends that the sentencing illegality in this case is not a clerical error and that the defendant misinterprets our decisions in *Cole* and *Jones* to suggest that they provide the inherent power to correct illegal sentences at any time. Consistent with our observation in note 8, *supra*, the Commonwealth observes that there was no jurisdictional question in *Jones*, when the court acted immediately to correct the erroneous sentence, and, accordingly, that case is easily distinguished from the case at bar. The Commonwealth also argues that *Cole* is distinguishable because it involved an obvious clerical error apparent from the face of the order. It asserts that the merits of Holmes's claim are not as clear.[12]

Before considering the merits of Holmes's claim, we first address the facts of the companion case, *Commonwealth v. Whitfield*, 24 EAP 2004. In May 1992, Rufus Whitfield pleaded guilty to auto theft, criminal conspiracy, theft by unlawful taking, receiving stolen property, and unauthorized use of a vehicle. He received sentences of probation of up to four years on several of these charges.[13] On others, including

12. Additionally, without directly disputing the impropriety of a sentence of three to six years of incarceration for a parole violation arising from the September 16, 1997 sentence of eleven and one-half to twenty-three months of incarceration, the Commonwealth asserts that the trial court actually revoked Holmes's *probation* and thus sentenced him properly for a probation violation. However, the records demonstrate that Holmes was not on probation at the relevant time because probation had been revoked in September 1997. Accordingly, the court could not have sentenced him for a probation violation. Thus, we reject this analysis.

13. Whitfield received a sentences of three years probation at CP# 9202–2510; four years probation at CP# 9112–1609, CP# 9112–1960, and CP# 9112–4607; and eleven and one-half to twenty-three months of incarceration at CP# 9112–1961, CP# 9112–1963, CP# 9106–2343, and CP# 9106–2344. The sentences of incarceration were to run concurrently with the incarceration at CP# 9112–1961. The records before this Court in CP# 9106–2343 and CP# 9106–2344 do not indicate which crimes correspond to which docket numbers other than

CP# 9106–2343 and 9106–2344, which are relevant to this appeal, he received sentences of eleven and one-half to twenty-three months of incarceration, with all sentences to run concurrently. Accordingly, no probationary period was imposed at CP# 9106–2343 and 9106–2344, the information numbers relevant to this appeal.

According to the trial court, Whitfield was paroled to a Community Corrections Center, from which he fled. He was arrested in October 1992 on a new theft charge. In June 1994, the court found a violation of the parole relating to the sentence imposed at CP# 9106–2343 and 9106–2344, but delayed sentencing. In February 1997, the trial court ordered Whitfield to serve the balance of the May 1992 sentence of eleven and one-half to twenty-three months of incarceration, and again released him on parole. The court noted that the probationary periods imposed in May 1992 in the other matters would expire in January 1998. Notes of Testimony, 2/19/1997, at 3.

In September 2001, after conviction on yet another charge, the court entered an order revoking Whitfield's "probation" on the original sentence imposed at CP# 9106–2343 and 9106–2344 and sentencing him to three and one half to seven years of incarceration. However, as noted, probation had never been imposed for those charges. Whitfield filed an untimely motion for reconsideration with the court on October 16, 2001, which was denied. Additionally, Whitfield filed a motion to vacate the sentence, arguing that no probation had been imposed at CP# 9106–2343 and 9106–2344, and thus that the sentence was illegal.[14] The court also denied this motion in March 2002.

Whitfield appealed to the Superior Court in April 2002, asserting that his sentence for a putative probation violation

CP# 9106–2343, theft by unlawful taking, and CP# 9106–2344, theft by receiving stolen property.

14. On appeal, the Superior Court treated this filing as a PCRA petition, noting that "any petition filed after the judgment of sentence becomes final will be treated as a PCRA petition." Super. Ct. Slip Op. at 2 (quoting *Commonwealth v. Johnson*, 803 A.2d 1291, 1293 (Pa.Super.2002)).

was illegal because no probationary term had been imposed in the matters docketed at CP# 9106–2343 and 9106–2344. In May 2002, the trial court ordered Whitfield to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. Whitfield timely complied, despite the absence of a transcript. In the statement, Whitfield challenged the legality of the probation violation sentence. The court then directed the production of relevant transcripts. After some difficulty, the notes of testimony were produced and delivered to the trial court in September 2002.[15]

In October 2002, notwithstanding the appeal pending in the Superior Court, the trial court determined that the sentence was illegal and entered an order vacating the sentence. The court explained:

> At the time of [the hearing on September 26, 2001] this court inadvertently believed that the defendant was still on [its] probation. This court has recently obtained the notes of testimony from [the] February 19, 1997 hearing wherein it is indicated that the defendant would be finished with this [court's] probation on January 8, 1998.

Order, 10/8/02. Having received the relief sought, Whitfield subsequently withdrew his appeal to the Superior Court, as he was no longer aggrieved.

The Commonwealth then appealed asserting that the trial court did not have jurisdiction to vacate the sentence during the pendency of Whitfield's appeal to the Superior Court. In its Rule 1925(a) opinion, the trial court rejected the Commonwealth's claim that the court did not have power to correct its sentencing order. The trial court stated that courts never relinquish their power to correct illegal sentences, as it did here.

15. Although the Commonwealth has contested the sufficiency of the notice of the trial court's intent to vacate the sentence, the trial court states that the District Attorney was copied on all relevant correspondence during this period. The court contends that it is "a blatant lie worthy of disciplinary action" for the Commonwealth to contend that it was not aware of the relevant notes of testimony or the issue at hand. Tr. Ct. Op. (Whitfield), 4/29/03, at 8.

The Superior Court affirmed the trial court's order correcting the sentence, relying on this Court's decisions in *Cole* and *Commonwealth v. Klein*, 566 Pa. 396, 781 A.2d 1133 (2001) (holding that a trial court had jurisdiction to correct manifest error in the calculation of sentence notwithstanding a pending appeal). The Superior Court held, "the [trial] court's correction was authorized by the legal necessity of rectifying a patent illegality." Super. Ct. Slip Op. at 4.

The Commonwealth, as appellant in Whitfield's case before this Court, claims that the alleged illegality in this case is not comparable to the clerical errors under *Cole* and *Klein*, and that the Superior Court erred in holding that a court may correct an illegal sentence at any time. The Commonwealth argues that not only had the thirty-day period for correction of orders under Section 5505 expired, but also that the court had been divested of jurisdiction when Whitfield appealed to the Superior Court. The Commonwealth further argues that the PCRA is the sole means for obtaining collateral relief. *See* 42 Pa.C.S. § 9542 ("This subchapter provides for an action by which ... persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies . . . ."). As it did in response to Holmes's appeal, the Commonwealth maintains that the Superior Court and Whitfield have confused waiver and jurisdiction, quoting our decision in *Fahy*, 737 A.2d at 223 ("Although legality of sentence is always subject to review within the PCRA, claims must still first satisfy the PCRA's time limits or one of the exceptions thereto."). It asserts that while claims of illegality cannot be waived, a court does not have perpetual jurisdiction to correct illegal sentences.

Whitfield asserts that the lower courts correctly determined that the trial court had jurisdiction to vacate the order.[16] He argues that the court's action in this case falls within its

16. In his brief, Whitfield asserts that he remains incarcerated on the sentence, which he contends is the only matter holding him in prison. Brief for Whitfield at 3.

inherent power to correct obvious and patent mistakes, alleging that the mistake in this case, the imposition of a sentence for violation of a non-existent probation, is obvious and patent. He contends that the Commonwealth fails to explain its allegation that the error in this case is not an obvious or patent mistake, when the notations in the Quarter Session file, which is part of the certified record in this case, demonstrate that a probationary period was never imposed on Whitfield at CP# 9106–2343 and 9106–2344, the only matters relevant to this appeal.

While acknowledging this Court's clear statements regarding the PCRA's jurisdictional prerequisites in *Fahy* and its progeny, Whitfield contends that "these cases did not consider whether such statutory jurisdictional requirements must give way to a trial court's inherent power to correct a manifest mistake in its order." Brief for Whitfield at 9. He argues that the statutory requirements must yield to the inherent power of courts, citing *Cole*, 263 A.2d at 341, in which we stated "[b]oth before and since the passage of [the precursor to Section 5505], a court retains its inherent power to correct any patent mistakes in its orders." He also notes that this Court held in *Klein*, 781 A.2d 1133, that a court has jurisdiction to correct a manifest sentencing error even after the filing of an appeal, notwithstanding Section 5505, which would otherwise divest a court of jurisdiction to correct such an order. Whitfield also argues that public policy requires the approval of the trial court's actions to correct an erroneous sentence to avoid squandering judicial resources in situations involving patent errors that would result in relief on collateral review.

■ The question presented by the parties, regarding the power of courts to correct allegedly illegal sentencing orders absent jurisdiction pursuant to 42 Pa.C.S. 5505 or the PCRA, is a question of law. Accordingly, our scope of review is plenary and our standard of review is *de novo*. *See Commonwealth v. Cousin*, 585 Pa. 287, 888 A.2d 710, 714 (2005).

■ The trial courts in both cases before us clearly lacked jurisdiction, absent the exercise of the rarely used power of

the courts to correct patent errors. While the causes of the two trial courts' lack of jurisdiction are undeniably distinct, nonetheless, both are encompassed under the language of Section 5505, see, supra, at 58 n. 2, which recognizes the removal of jurisdiction upon appeal as in Whitfield's case, see Klein, 781 A.2d 1133, and the removal of jurisdiction upon the end of the term of court or the statutory thirty-day expansion of that time, as in Holmes's case, see Cole, 263 A.2d 339.[17] Despite the different causes of the divestiture of jurisdiction, both cases fall within the limited class of cases amenable to the exercise by a trial court of the inherent power to correct patent errors despite the absence of traditional jurisdiction. As we have in the past, we hold today that the limits of jurisdiction enshrined in Section 5505 do not impinge on that time-honored inherent power of courts. See, e.g., Klein, 781 A.2d 1133; Commonwealth v. Cole, 263 A.2d at 341.

In Cole, we considered the tension between the predecessor to Section 5505 and a court's inherent power, and held that the statute "was never intended to eliminate the inherent power of a court to correct obvious and patent mistakes in its orders, judgments and decrees." Cole, 263 A.2d at 341. In that case, the trial court entered an order granting the defendant's motion for a new trial and arrest of judgment. Over three months after the entry of the order, well beyond the statutory jurisdictional period of thirty days, the trial court modified the order to dismiss the motion for arrest of judgment and to grant the motion for new trial. The defendant challenged, inter alia, the trial court's jurisdiction to amend the order based on the expiration of the thirty-day statutory period. This Court concluded that the trial court retained jurisdiction. We observed that "[t]he grant of a new trial [a]nd the grant of the motion in arrest of judgment were so clearly antagonistic that even the most casual reading of the order would disclose

17. In Cole, the Court construed the Act of June 1, 1959, P.L. 342, No. 70, § 1, which provided courts jurisdiction, inter alia, to modify an order not only during the relevant term but also for thirty days after the entry of the order in cases where the term would otherwise terminate prior to the expiration of the thirty-day period. The current Section 5505 is a "substantial reenactment" of the Act according to the official comments. 42 Pa.C.S. § 5505, cmt.

the irreconcilable nature thereof." *Id.* at 341. We continued, "if the motion in arrest of judgment was proper, Cole could not be tried again whereas, if the new trial were proper, the motion would have to fail." *Id.* As noted above, this Court, in approving the trial court's exercise of jurisdiction, relied on a string of cases dating back to the nineteenth century, recognizing a court's inherent power to correct patent mistakes. *Id.* at 341.

More recently, in *Klein*, we again noted the inherent power to correct patent and obvious errors. Notably, we did not limit the inherent power to those errors evident on the face of the order, but rather approved of a trial court's correction of a "patent defect or mistake *in the record.*" *Klein*, 781 A.2d at 1135 (emphasis added). In *Klein*, the trial court sentenced the defendant and credited him with thirty-three days of time served on June 23, 1999. On June 25, 1999, after the prison officials alerted the court to the fact that the defendant had only served one day, the trial court issued an order *sua sponte* directing "the Defendant to reappear for re-sentencing" on June 30, 1999. Prior to the June 30 re-sentencing, the defendant filed a notice of appeal of the June 23 sentencing order, thus terminating the trial court's jurisdiction. The trial court, on June 30, rejected the defendant's claim that the court did not have jurisdiction, and amended the order to indicate only one day of time served. This Court on review found the trial court's exercise of jurisdiction appropriate under *Cole*, even though the error was not obvious on the face of the order but emerged only in light of information provided by a third party.

■ Holmes's sentencing order, like the order in *Cole*, contained a patent mistake, a fact apparent from a review of the docket without resort to third-party information. The order stated, "parole is hereby revoked," and then sentenced Holmes to serve "Not less than three (3) years nor more than six (6) years in the State Correctional Institution, to run concurrently with any sentence now serving." Trial Court Order, 5/21/01. The Commonwealth has not disputed that the sentence imposed was in direct conflict with the longstanding precedent that a parole violator cannot be sentenced to a new

sentence but instead can only be recommitted to the remainder of the original sentence. *See Fair*, 497 A.2d 643. There is no dispute that Holmes's original sentence entailed a maximum of twenty-three months of incarceration. Considering that the error of the sentence was clear from the order and the docket sheet, the trial court properly exercised its inherent power to correct the mistake.

■ Similarly, Appellant Whitfield is entitled to the relief granted by the trial court under our caselaw upholding the inherent jurisdiction of courts to correct patent and obvious mistakes. The trial court imposed a new sentence of incarceration on Whitfield for a violation of probation even though probation was never imposed.[18] While the mistake is not apparent based on the face of the order itself, one need only look to the Quarter Session notes in the record to see the mistake.

■ Although the defendants before this court warrant relief under the inherent power of courts to correct patent errors, we must also emphasize the limits of this power. This exception to the general rule of Section 5505 cannot expand to swallow the rule. In applying the exception to the cases at bar, we note that it is the obviousness of the illegality, rather than the illegality itself, that triggers the court's inherent power. Not all illegal sentences will be amenable to correction as patent errors. Moreover, the inherent power to correct errors does not extend to reconsideration of a court's exercise of sentencing discretion. A court may not vacate a sentencing order merely because it later considers a sentence too harsh or too lenient. The cases at bar are not cases where a court reconsidered the application of its sentencing discretion or its interpretation of a nuanced or ambiguous statutory

18. While the trial court's order states that the "the defendant would be finished with this court[']s probation on January 8, 1998," the court's opinion indicates an even more fundamental and obvious error in that the probation violation sentence attached to CP# 9106–2343 and 9106–2344, for which he received a sentence of incarceration without any period of probation. Tr. Ct. Slip Op. (Whitfield), 4/29/03, at 5. Accordingly, he was sentenced for violating a probationary term that did not exist.

provision. These cases involve clear errors in the imposition of sentences that were incompatible with the record, as in *Whitfield*, or black letter law, as in *Holmes*. As we have in the past, we emphasize that this is a limited judicial power. Nonetheless, we find it applicable to the cases at bar. Accordingly, we approve of the trial court's orders vacating the illegal sentences. Thus, the Superior Court's decision in *Whitfield* is affirmed, and the Superior Court's decision in *Holmes* is reversed.

Justice CASTILLE and SAYLOR join the opinion.

Justice BALDWIN files a concurring opinion.

Justice FITZGERALD files a concurring opinion.

Justice EAKIN files a dissenting opinion in which Chief Justice CAPPY joins.

Justice BALDWIN, concurring.

I join the well-reasoned majority opinion in full with regard to Appellant Christopher Holmes. I also join the opinion with regard to Appellee Rufus Whitfield, but do so with reluctance. I write separately to express my concern regarding the single, and I believe critical, fact that distinguishes Whitfield's case from Holmes'. In Whitfield's situation, the case was on appeal, subject to the Superior Court's jurisdiction, when the trial court modified its order. *See* Majority Opinion, at 63. Holmes' case was not on appeal at that time. Therefore, his case was not subject to another court's jurisdiction at the time of the trial court's action. *See* Majority Opinion, at 60. In my opinion, in the circumstance where a case is on appeal and is thus under the appellate court's jurisdiction, the trial court is divested of all power, express or inherent, to modify its orders, no matter how patent and obvious. Jurisdiction, in this sense, is an all-or-nothing proposition. I recognize that this Court's decision in *Commonwealth v. Klein*, 566 Pa. 396, 781 A.2d 1133 (2001), reads otherwise.

In *Klein*, a jury found Maurice Klein guilty of simple assault, recklessly endangering another person, and accidents

involving death or personal injury. *Id.* at 398, 781 A.2d at 1133. At sentencing, there was a dispute over how many days Klein had spent in jail prior to trial. The pre-sentence report indicated that he had spent thirty-three days in jail, while defense counsel informed the court that he had only spent one day in jail. Despite the admission of defense counsel, the trial court nonetheless credited Klein for thirty-three days of time served.[1] *Id.* at 398, 781 A.2d at 1134.

On June 25, 1999, the York County prison officials contacted the trial court and clarified that Klein had indeed only served a single day in jail and was then released. The trial court issued an order requiring Klein to appear five days later for re-sentencing. However, between the date the order was issued and the date scheduled for re-sentencing, Klein filed a notice of appeal from the original sentencing order with the Pennsylvania Superior Court. *Id.* The second sentencing hearing nevertheless went forward. At that hearing, Klein challenged the trial court's authority to modify the sentence, alleging that the trial court was without jurisdiction as the case was then on appeal. The trial court rejected Klein's argument and modified the order to reflect the accurate amount of time served before trial. *Id.* at 399, 781 A.2d at 1134.

On appeal, the Superior Court found that the June 25, 1999 order implicitly vacated the original sentencing order, as the court left no doubt that it would be re-sentencing Klein at the hearing. As such, the court further concluded that Klein improperly filed an appeal from the original sentencing order, which it held had been vacated. *Id.* This Court granted allowance of appeal and held that the June 25, 1999 order did not implicitly vacate the original sentencing order. First, we noted that this Court has never held that an order can be implicitly vacated. *Id.* at 400, 781 A.2d at 1135. Secondly, we found that the June 25, 1999 order did not vacate the previous order, but merely ordered Klein to appear for another sen-

---

1. Klein was sentenced to serve the time served (thirty-three days) to twelve months in prison.

tencing hearing. *Id.* Thus, Klein's Notice of Appeal was properly filed.

Since we held that the sentencing order was not vacated, we were left to determine whether the trial court had jurisdiction to modify that order. In addressing this question, the following conflict became apparent:

> The law is clear that a court may modify or rescind any order within 30 days after its entry, if no appeal has been taken. 42 Pa.C.S. § 5505; Pa.R.A.P. 1701(a). Thus, where a Notice of Appeal has been filed, the trial court cannot act further in the matter. However, this rule must be read in conjunction with a court's inherent powers "to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or supply defects or omissions in the record, even after the lapse of the term."

*Id.* at 400, 781 A.2d at 1135 (quoting *Commonwealth v. Cole,* 437 Pa. 288, 292, 263 A.2d 339, 341 (1970)). In *Cole,* this Court held that a trial court has the inherent power to correct errors on the record that were "obvious and patent" even where the action was taken beyond the thirty-day statutory limit to modify orders. *Cole,* 437 Pa. at 292, 263 A.2d at 341. The *Klein* Court held the court's inherent powers, as described in *Cole,* permitted the trial court to modify the original sentencing order beyond the thirty day time limit codified in 42 Pa.C.S. § 5505, despite the fact that the case was properly on appeal. *Klein,* 566 Pa. at 401, 781 A.2d at 1135.

Given the opportunity, I would overrule *Klein.* However, where, as here, this Court is without the benefit of full briefing and argument from the parties, the jurisprudentially sound course of action is to wait for another day to address the extant viability of *Klein.* The conflict seemingly resolved in *Klein* was already discussed in *Cole* and decided in *Commonwealth v. Tabb,* 417 Pa. 13, 207 A.2d 884 (1965). Yet, the *Klein* Court neglected to discuss *Tabb,* or attempt to overrule it.

In *Cole,* the trial court granted both a new trial and a motion in arrest of judgment, and later amended its order to

grant only the motion for a new trial three and one half months after the original order. On review, we held that since the result of granting both motions was so clearly antagonistic, the error must be considered patent and obvious. Where that is the case, the trial court's inherent and long-standing powers include the power to correct such mistakes. *Cole*, 437 Pa. at 292, 263 A.2d at 341. Cole argued that the trial court did not have jurisdiction, citing *Tabb*. However, this Court rejected that argument by distinguishing *Tabb* on the grounds that, in *Tabb*, the trial court was without jurisdiction because an appeal had been perfected. *Cole*, 437 Pa. at 292, 263 A.2d at 341. Cole had not perfected an appeal. Thus, *Tabb* was held to be inapplicable and the trial court's inherent powers provided an acceptable basis for its action.

The *Klein* Court, without discussion of the *Tabb* principle, simply resolved the conflict in favor of the trial court's long-standing powers. However, equally long-standing is the principle that once a case is properly on appeal, subject to the respective appellate court's jurisdiction, the trial court is divested of all powers, express or inherent, unless otherwise provided by a law or rule. *See Harwood v. Bruhn*, 313 Pa. 337, 170 A. 144 (1934). If the *Tabb/Harwood* rule is not upheld, it will be left to the each trial court to individually interpret its inherent powers when a case is on appeal. Pennsylvania Rule of Appellate Procedure 1701(b) enumerates the powers inherently held by the trial court after an appeal has been perfected. Under this rule, a trial court may:

(1) Take such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or other ancillary to the appeal or petition for review proceeding.

(2) Enforce any order entered in the matter, unless the effect of that order has been superseded as prescribed in this chapter.

(3) Grant reconsideration of the order which is the subject of the appeal or petition, if:

(i) an application for reconsideration of the order is filed In the trial court or other governmental unit within the time provided or prescribed by law: and

(ii) an order expressly granting reconsideration of such prior order is filed in the trial court or other governmental unit within the time prescribed by these rules for filing a notice of appeal or petition for review of a quasijudicial order with respect to such order, or within any shorter time provided or prescribed by law for the granting of reconsideration.

A timely order granting reconsideration under this paragraph shall render inoperative any such notice of appeal or petition for review of a quasijudicial order theretofore or thereafter filed or docketed with respect to the prior order. The petitioning party shall and any party may file a praecipe with the prothonotary of any court in which such an inoperative notice or petition is filed or docketed and the prothonotary shall note on the docket that such notice or petition has been stricken under this rule. Where a timely order of reconsideration is entered under this paragraph, the time for filing a notice of appeal or petition for review begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the trial court or other governmental unit. No additional fees shall be required for the filing of the new notice of appeal or petition for review.

(4) Authorize the taking of depositions or the preservation of testimony where required in the interest of justice.

(5) Take any action directed or authorized on application by the appellate court.

(6) Proceed further in any matter in which a nonappealable interlocutory order has been entered, notwithstanding the

filing of a notice of appeal or a petition for review of the order.

Pa.R.A.P. 1701(b).

Whitfield's case was properly on appeal. The majority correctly applies *Klein,* as we are not asked by the parties to reconsider the conflict detailed above. Therefore, I hesitate to advocate overruling *Klein* in this case without the benefit of full briefing and argument by the parties before the entire Court. In the appropriate case, however, I perceive that *Klein* could not control. I am compelled, by the current state of the law, to join the majority opinion with regard to Whitfield, although I do so reluctantly.

Justice FITZGERALD, concurring.

I agree with the majority's conclusion that trial courts retain the inherent authority to correct patent errors they have made, specifically and especially in the context of recognizing and rectifying illegal sentences where justice requires it. I therefore join the majority in the matter of *Commonwealth v. Holmes.*

With respect to *Commonwealth v. Whitfield,* however, I concur in the result only. I believe that the courts below ultimately reached the only just result by vacating Whitfield's illegal sentence, and I would not have granted allocatur in this matter.

Justice EAKIN, dissenting.

I disagree with the majority's conclusion that the trial court had jurisdiction to vacate, *sua sponte,* sentences in cases more than 30 days after their imposition, and I respectfully dissent from the expansion of the exceptions to the clear language of 42 Pa.C.S. § 5505.

As the majority notes, a claim concerning the illegality of a sentence is non-waivable. *See Commonwealth v. Andrews,* 564 Pa. 321, 768 A.2d 309, 312 (2001) (citing *Commonwealth v. Vasquez,* 560 Pa. 381, 744 A.2d 1280, 1283 (2000)); *see also Commonwealth v. Johnson,* 542 Pa. 568, 669 A.2d 315, 321

(1995). A defendant does not have to preserve the issue for review by filing a post-sentence motion or a direct appeal, as is ordinarily required. *See* Pa.R.A.P. 302(a) (issues not raised in lower court are waived and cannot be raised for first time on appeal).

However, we are not talking about waiver by the accused- the present question is jurisdiction of the court:

> Jurisdiction is the predicate upon which a consideration of the merits must rest. Where the jurisdiction of the court has been lost ..., the attractiveness of an argument on the merits is of no moment because the tribunal is without the power to grant the requested relief.

*Robinson v. Commonwealth, Pennsylvania Board of Probation and Parole*, 525 Pa. 505, 582 A.2d 857, 860 (1990) (citations omitted); *see also Johnson*, at 321 (term "jurisdictional" defined by plain meaning: "the power, right, or authority to interpret and apply the law ...") (quoting Webster's Ninth New Collegiate Dictionary 655 (1986)).

Jurisdiction of court is not established by the courts; it is established by the constitution and the legislature. Section 5505 plainly states that a trial court has jurisdiction to modify a sentence within 30 days after its imposition, 42 Pa.C.S. § 5505; failure of the court to act within that period will usually result in loss of jurisdiction to modify the sentence. *See Commonwealth v. Bogden*, 364 Pa.Super. 300, 528 A.2d 168, 169–70 (1987). Holmes, however, argues that Pennsylvania's appellate courts have "consistently held [a trial] court may afford relief 'at any time' where it has issued an illegal or erroneous sentence, notwithstanding the otherwise applicable [30]-day time limit in [ ] § 5505." Holmes's Brief, at 9. Whitfield likewise claims "[w]hen statutory jurisdictional requirements are balanced directly against the inherent power of a court to correct an obvious and patent error, the jurisdictional requirements inevitably give way." Whitfield's Brief, at 10.

The majority, as did the Superior Court, relies on *Commonwealth v. Cole*, 437 Pa. 288, 263 A.2d 339 (1970) and *Common-*

*wealth v. Klein,* 566 Pa. 396, 781 A.2d 1133 (2001), in concluding the trial court had inherent power to modify Holmes's and Whitfield's sentences; however, these cases are readily distinguishable.

In *Cole,* the trial court entered an order granting the defendant's motions for both a new trial and an arrest of judgment; clearly this was inconsistent, as an arrest of judgment precludes a new trial. Three and one-half months later, the trial court modified this patent inconsistency, granted a new trial, and dismissed the motion in arrest of judgment.

On appeal, the defendant argued since the 30–day statutory period for modification of the order had elapsed, the trial court lacked the power to amend or correct its previous order. This Court rejected this argument, noting:

> In the instant case, the [initial] order ... was patently erroneous. The grant of a new trial *and* the grant of the motion in arrest of judgment were so clearly antagonistic that even the most casual reading of the order would disclose the irreconcilable nature thereof. To grant a new trial *and* a motion in arrest of judgment simultaneously was contrary to common sense; if the motion in arrest of judgment was proper, Cole could not be tried again whereas, if the new trial was proper, the motion would have to fail. What the court did was simply to correct ... a mistake which was plain on the face of the order.... "The power to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or supply defects or omissions in the record, even after the lapse of the term, is inherent in courts of justice...." The 1959 statute [ 1] was never intended to eliminate the inherent power of a court to correct obvious and patent mistakes in its orders, judgments and decrees.... Both before and since the passage of this statute, a court retains its inherent power to correct any patent mistakes in its orders.

1. The Act of June 1, 1959, P.L. 342, No. 70, § 1, 12 P.S. § 1032, was the precursor to § 5505, and provided a court had jurisdiction to "alter, modify, suspend, reinstate, terminate, amend or rescind" its order for 30 days after its entry. *Id.*

*Cole*, at 341 (citations omitted; footnote added; emphasis in original).

Thus, unlike the present cases, the error in the order in *Cole* was patent and obvious on the face of the order itself; accordingly, corrections made outside the 30–day period were allowed. In the present case, although the Superior Court characterized the error in sentence as a "patent illegality," *Commonwealth v. Whitfield*, 3194 EDA 2002, unpublished memorandum at 4 (Pa.Super.2003), the order on its face did not reveal that the sentence had been imposed for violation of a probationary sentence that had expired. The order, *on its face*, is simply not contradictory or illegal; rather, any illegality relies on other facts. Accordingly, *Cole* is inapposite.

In *Klein*, the trial court sentenced the defendant to time served to 12 months imprisonment. The pre-sentence investigation report mistakenly reflected the defendant had served 33 days in prison; he had actually served one day. Two days after sentencing, learning of this error, the court directed the defendant to appear for resentencing June 30, 1999; the court did not vacate the order of sentence. On June 28, 1999, the defendant appealed, challenging his underlying convictions. On June 30, 1999, as scheduled, the trial court resentenced the defendant to one to 12 months imprisonment, crediting the time served as one day.[2] With respect to the trial court's modification of its sentencing order after the defendant had filed a notice of appeal, we concluded:

> While normally a court would not be permitted to take such action once it was divested of jurisdiction pursuant to § 5505, we find that under the limited circumstances of this case, the court could take further action in this matter since it was merely correcting a patent defect or mistake in the record.

2. The Superior Court quashed the defendant's appeal from the first sentencing order, holding the order was implicitly vacated when the trial court scheduled resentencing for June 30, and therefore, the defendant's appeal from the first order was improper. This Court held the order scheduling resentencing did not implicitly vacate the initial sentencing order, and the defendant's appeal was proper. *Klein*, at 1135.

*Id.* (citing *Cole* ). Accordingly, we remanded to the Superior Court for consideration of the other issues raised by the defendant in his appeal.

*Klein,* which was specifically and expressly limited to its facts, is likewise distinguishable. The error in *Klein* was a miscalculation in the nature of a clerical mistake. This Court noted the judge's action was "essentially issuing the same sentence" while "correcting a patent defect or mistake in the record." *Id.,* at 1135. The errors in the present cases were neither clerical nor patent; thus, they require redress through direct or collateral appellate review.

A mistake patent on the face of the order is qualitatively different than a mistake in the facts underlying the sentencing scheme. Whether this sentence followed violation of parole or probation is not patent on the face of the order. The sentencing order on its face is not illegal—it is only illegal because of matters not appearing on its face. This is not a ministerial amendment or correction of a clerical mistake.

Indeed, the majority notes "one need only look to the Quarter Session notes in the record to see the mistake," Majority Op. at 617, 933 A.2d at 66, reflecting that it is *not* a patent mistake—it is a mistake which requires inquiry *into the record,* far beyond the face of the order. There is nothing in such a scenario that reinvests the sentencing court with jurisdiction. If we are to make exceptions to this most basic of concepts, jurisdiction, these exceptions should be limited. The defendants may be entitled to relief, but they must pursue it in a court with jurisdiction. The *sua sponte* modification of sentences, without so much as a motion filed in any court, much less one with jurisdiction, is a proposition we should avoid.

The PCRA specifically provides that "[t]he imposition of a sentence greater than the lawful maximum" is grounds for relief, 42 Pa.C.S. § 9543(a)(2)(vii); thus, an illegal sentence is to be challenged collaterally. Furthermore, the PCRA states:

This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. *The action*

*established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis.*

*Id.,* § 9542 (emphasis added); *see also Commonwealth v. Ahlborn,* 548 Pa. 544, 699 A.2d 718, 721 (1997) (PCRA provides sole means for obtaining state collateral relief). In cases where no direct appeal is taken, the PCRA is the sole means for reinstating the right to a direct appeal *nunc pro tunc. See Commonwealth v. Hall,* 565 Pa. 92, 771 A.2d 1232, 1235–36 (2001); *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564, 569–70 (1999). Outside of this process, there is no relief available for a defendant serving an illegal sentence; although the issue of illegality cannot be waived, no trial court has jurisdiction to review it after the 30–day period unless (1) a direct appeal is filed and the appellate court then remands the matter to the trial court, *see Vasquez,* or (2) the matter is raised in a timely PCRA petition.

In cases where a direct appeal has been filed, the trial court is divested of jurisdiction, Pa.R.A.P. 1701(a), which then lies solely with the appellate court. Any sentencing concerns not raised by the parties can be brought to the appellate court's attention by the trial court. The appellate court can then vacate the sentence or remand the matter to the trial court for resentencing. *See Vasquez,* at 1284 ("When a trial court imposes a sentence outside of the legal parameters prescribed by the applicable statute, the sentence is illegal and *should be remanded for correction.*") (emphasis added).

The process whereby a trial court may hear challenges to the legality of a sentence has been delineated by this Court in the Rules of Criminal Procedure [3] and by the legislature in the

**3.** Holmes argues the official comments to Pa.R.Crim.P. 708 and Pa. R.Crim.P. 720 refer to a "court's inherent powers to correct an illegal sentence ... *at any time* ...," Pa.R.Crim.P. 708, comment; *id.,* 720, comment (emphasis added), thus supporting his argument that a trial court never loses jurisdiction to modify an illegal sentence. However, Holmes takes this phrase out of context by quoting only a portion of it; in its entirety, it reads: "at any time *before appeal or upon remand by*

Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. After a sentence has been imposed, a defendant has ten days to file an optional post-sentence motion, Pa.R.Crim.P. 708(D), 720(A); if no post-sentence motion is filed, the defendant has 30 days from the date of sentencing to file a direct appeal. *Id.,* 720(A)(3). Corresponding with § 5505, a trial court has jurisdiction to modify a sentence until a direct appeal is filed. *See* Pa.R.A.P. 1701(a) (after appeal is taken, trial court may no longer proceed further in matter). If no direct appeal is filed within 30 days, the trial court loses jurisdiction and the defendant must seek collateral relief if he wishes to have his sentence reviewed. *See* Pa.R.Crim.P. 901, comment (rules pertaining to post-conviction collateral proceedings are intended to require that, in single proceeding, defendant must raise and judge must dispose of all grounds for relief available after conviction and exhaustion of appellate process, either by affirmance or *by failure to take timely appeal*) (emphasis added).

Holmes did not file a motion to modify sentence or a direct appeal; furthermore, he failed to file a timely PCRA petition.[4] Thus, he chose to forego the only means available to correct his illegal sentence. *See Commonwealth v. Lyons,* 830 A.2d 663, 665 (Pa.Cmwlth.2003) (offender may request modification

the appellate court." *Id* (emphasis added). Thus, because the appeal period is 30 days, Pa.R.Crim.P. 720(A), the trial court only has jurisdiction to modify an order during that time, unless the appellate court remands for modification or resentencing after appeal.

4. A PCRA petition must be filed within one year of the date the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment of sentence becomes final at the conclusion of direct review, including discretionary review in this Court or the United States Supreme Court, or at the expiration of time for seeking such review. *Id.,* § 9545(b)(3). The sentence Holmes wished to challenge was imposed May 21, 2001; it became final 30 days later, when the time to file a direct appeal expired. Thus, having failed to file a petition within this period, Holmes cannot obtain relief under the PCRA. Contrary to the Superior Court's conclusion that Holmes could challenge the legality of his sentence in a collateral proceeding, *Holmes,* at 504, such avenue of relief is now foreclosed to him.

The Commonwealth avers in its brief that while Holmes's Petition for Allowance of Appeal was pending before this Court, he filed a PCRA petition February 3, 2004, and, although the Commonwealth moved to dismiss the petition as untimely, the PCRA court continued the matter until August 27, 2004. Commonwealth's Brief for Appellee, at 6 n. 2.

of sentence by: (1) motion for modification of sentence under Pa.R.Crim.P. 720; (2) direct appeal; (3) PCRA petition; or (4) petition to amend order of mandatory restitution made during sentencing hearing). Holmes failed to avail himself of the first three means, and the fourth is inapplicable here.

Because § 5505 requires adherence to a time frame in order for a trial court to have jurisdiction to modify a sentence, I would hold the trial court in this case, by acting outside of the 30–day period, lacked jurisdiction to modify its original sentencing order. Accordingly, I would affirm the order of the Superior Court reversing the order of the trial court and reinstating Holmes's original sentence imposed May 21, 2001.

Whitfield filed a direct appeal after the trial court denied his motion to vacate his sentence; this divested the trial court of jurisdiction. Upon realizing its error, the proper course for the trial court would have been to bring its mistake to the Superior Court's attention; the Superior Court could have vacated the sentence on direct appeal. In acting outside the 30–day period, while a direct appeal was pending, the trial court lacked jurisdiction to modify the September 26, 2001 sentence.[5] Accordingly, I would reverse the order of the Superior Court affirming the trial court's order vacating Whitfield's September 26, 2001 sentence.

Chief Justice CAPPY joins this dissenting opinion.

---

5. There is the possibility Whitfield may have been influenced by the trial court to withdraw his appeal after the court amended his sentence; if so, then the trial court's unauthorized action in vacating Whitfield's sentence would have lulled Whitfield into forgoing direct and collateral review, allowing the time period for filing a PCRA petition to expire. Thus, the governmental interference exception to the PCRA's one-year time-bar may apply. *See* 42 Pa.C.S. § 9545(b)(1)(i) (failure to raise claim previously was result of interference by governmental officials with presentation of claim). Because it is unclear from the record what the circumstances leading to Whitfield's withdrawal of his direct appeal were, remand for consideration of such circumstances would be appropriate.