J-S42020-24                    2025 PA Super 77

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN VIALIZ-RIOS | : | |
| | : | |
| Appellant | : | No. 390 MDA 2024 |

Appeal from the Judgment of Sentence Entered October 10, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0001188-2022

BEFORE:  LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

OPINION BY BECK, J.:                          **FILED: MARCH 28, 2025**

Jonathan Vializ-Rios ("Vializ-Rios") appeals from the judgment of sentence imposed by the Lancaster County Court of Common Pleas ("trial court") following his convictions for crimes against Amy Castro ("Castro") and their one-year-old child, I.V.  He alleges that he is serving an illegal sentence on the grounds that two of his convictions should have merged.  He also challenges the trial court's authority to order that he have no contact with Castro and I.V., a condition which the trial court later vacated.  We affirm.

As of February 20, 2022, Castro and Vializ-Rios had been in a relationship for approximately eighteen months.  On that date, Castro, Vializ-Rios, and I.V. stopped at a Turkey Hill convenience store.  N.T., 8/14/2023, at 59-60.  Castro and Vializ-Rios "started arguing about nonsense, and then he started hitting" Castro inside the vehicle.  **Id.** at 60.  He struck Castro in the face multiple times with a closed fist.  **Id.** at 61.  She defended herself

and was able to start the drive towards her home, which was "about a two-minute drive or less" away. *Id.* Vializ-Rios then hit her "in the face with a bottle." *Id.* She was "bleeding a lot," and her "teeth were dangling outside of [her] mouth." *Id.* at 63. Castro was able to drive to her residence, park the car, and retrieve I.V. from the backseat. *Id.* at 64-65. She called 911 and connected for approximately fifteen seconds before Vializ-Rios took the phone from her hands. *Id.* at 65.

The police arrived shortly thereafter, and Castro went to the hospital where she received stitches to her left eyebrow and lips, and a splint over her upper jawline. *Id.* at 68. Medical staff reset her teeth in their sockets. *Id.* The procedures required Castro to be on an all-liquid diet for approximately six weeks. *Id.* at 69. As of trial, two teeth were still broken and required future procedures. *Id.* The Commonwealth presented photographic evidence of the injuries as well as the testimony of the treating physician, who testified that Castro suffered an "alveolar ridge fracture," which is a bone "that holds your teeth in[.]" N.T., 8/15/2023, at 204.

Vializ-Rios was charged with seven total crimes: two counts each of aggravated assault and recklessly endangering another person, and one count each of endangering the welfare of a child, simple assault, and stalking.[1] The case proceeded to a jury trial, after which the jury found Vializ-Rios guilty on

_____

[1] 18 Pa.C.S. §§ 2702(a)(1),(4); 2705; 4304(a)(1); 2701(a)(1); and 2709.1(a)(1).

all counts. On October 10, 2023, the trial court imposed its sentence. At count one, for aggravated assault – causing serious bodily injury, the trial court imposed a sentence of seven-and-one-half to fifteen years of incarceration. A consecutive sentence of one to three years of incarceration was imposed at count three, endangering the welfare of a child. Additional periods of incarceration were imposed at all other counts, set concurrent to each other. The trial court also imposed a no contact order pertaining to Vializ-Rios and I.V.[2]

On October 20, 2023, Vializ-Rios filed a post-sentence motion, which was denied by operation of law. Vializ-Rios filed a timely notice of appeal and presents two issues for our review:

I. Was the imposition of a sentence for count two, aggravated assault, causing bodily injury with a deadly weapon, illegal, as this conviction should have merged with count one, aggravated assault, causing serious bodily injury, because these two offenses were two subsections of the same crime and involved the same criminal act?

II. Did the trial court err in imposing a condition of no contact with Amy Castro and her family and no contact with [] Vializ-Rios'[] son without consent of Amy Castro, where the court had no jurisdiction to impose these conditions, as the Pennsylvania Department of Probation and Parole has exclusive authority over state parole conditions, and the Pennsylvania Department of Corrections has exclusive authority over state prison conditions?

Vializ-Rios' Brief at 5.

_____

[2] The trial court vacated this condition after Vializ-Rios filed his notice of appeal.

Vializ-Rios' first issue asserts that the trial court illegally imposed a sentence at count two, aggravated assault – causing bodily injury. *Id.* at 11. He argues that the sentence should have merged with the sentence at count one on the basis that "[t]he facts underlying these two charges, as set forth in the information, were identical," i.e., it alleged that Vializ-Rios was guilty of both crimes because he struck Castro's mouth with a glass bottle. *Id.* at 12.

A claim that sentences should have merged implicates the legality of sentence and presents a pure question of law. *See Commonwealth v. Lomax*, 8 A.3d 1264, 1267 (Pa. Super. 2010). We therefore review the claim de novo. *Id.* Our General Assembly has set forth a statutory standard for merger:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

By enacting this statute, the General Assembly expressed its "intent to preclude the courts of this Commonwealth from merging sentences for two offenses that are based on a single criminal act unless all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Commonwealth v. Baldwin,* 985 A.2d 830, 837 (Pa. 2009).

To establish a violation of section 2702(a)(1), the Commonwealth must establish that the actor either attempted to cause serious bodily injury or

caused such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. Separately, section 2702(a)(4) criminalizes the attempt to cause bodily injury with a deadly weapon or intentionally or knowingly causing such injury with a deadly weapon. This Court has held that these crimes do not merge under section 9765:

> [W]hen the two subsections are read together it is apparent that subsection (4) contains an element that is not found in the greater offense of subsection (1). Specifically, subsection (4) requires that the assault be caused or attempted "with a deadly weapon". This element is not contained in subsection (1), which prohibits any attempt to cause or the causing of serious bodily injury but which does not limit itself to any particular mode of causing such an injury.

*Commonwealth v. Rhoades*, 8 A.3d 912, 918 (Pa. Super. 2010) (citation omitted).

Vializ-Rios does not dispute that analysis. Instead, he cites cases where courts apply a "single harm" test to determine if crimes should merge. *See* Vializ-Rios' Brief at 16-17. Under that principle, violations of multiple subsections of the same crime do not merge if they arise out of the same act, as the actor has inflicted only one harm. Because Vializ-Rios' two aggravated assault convictions were both based on his single act of striking Castro in the face one time, he contends that the sentences must merge. In support, he cites *Commonwealth v. Shannon*, 608 A.2d 1020 (Pa. 1992) (plurality); *Commonwealth v. Provenzano*, 50 A.3d 148 (Pa. Super. 2012); *Commonwealth v. Williams*, 871 A.2d 254 (Pa. Super. 2005);

- 5 -

*Commonwealth v. Dobbs*, 682 A.2d 388 (Pa. Super. 1996), *Commonwealth v. Owens*, 649 A.2d 129 (Pa. Super. 1994), and *Commonwealth v. Rhoads*, 636 A.2d 1166 (Pa. Super. 1994).

In **Shannon**, a plurality of our Supreme Court determined that the "imposition of separate sentences for convictions on subsections (2) and (5) of 18 Pa.C.S. § 3123 arising from a single act constitutes an illegal sentence." **Shannon**, 608 A.2d at 1021. The **Shannon** Court's analysis was based on an "examination of the subject criminal statute." **Id.** at 1024. The "fair import of the statute's terms … reveals a design to proscribe the same harm, involuntary deviate sexual intercourse. Therefore[,] each subsection of the statute provides an alternative basis upon which the crime can be established." **Id.** The **Rhoads** decision adopted the rationale of the **Shannon** plurality, thus making it precedential for this Court. **Rhoads**, 636 A.2d at 1167. **See also Owens**, 649 A.2d at 138 (concluding that the subject criminal statute "establish[ed] an alternative basis for culpability rather than each representing the commission of a separate crime for sentencing purposes"); **Dobbs**, 682 A.2d at 392 (holding that "[t]he rationale of **Shannon, Rhoads** and **Owens** applies equally to the aggravated assault statute").

Importantly, each of the above cases was decided prior to our General Assembly enacting section 9765 in 2002. Our Supreme Court has stated that its "pre-Section 9765 jurisprudence characterized the merger doctrine as, first and foremost, a rule of statutory construction." **Baldwin**, 985 A.2d at 835.

However, section 9765 established that the General Assembly instructed courts to "focus[ ] solely on the elements of the offenses for which a criminal defendant has been convicted." *Id.* These cases are therefore no longer controlling and have been superseded by the enactment of section 9765. *See Commonwealth v. Merced*, 308 A.3d 1277, 1283 (Pa. Super. 2024).

We recognize that the remaining two cases upon which Vializ-Rios relies, *Provenzano* and *Williams*, were decided after the statute's enactment and nonetheless applied the "same harm" test. Neither case, however, discusses section 9765 or even recognizes its passage. *Williams* has been criticized on that basis. *See Merced*, 308 A.3d at 1283 ("[W]e reject [Merced]'s invitation to apply a different merger analysis like that utilized by this Court in our decision in *Williams*. .... [T]he proper test to be applied is that outlined by § 9765[.]"). As *Rhoades* held, the sentences imposed here do not merge under section 9765, and we are bound to apply that statute to this merger claim. We therefore disagree that the concurrent sentence imposed by the trial court at count two is illegal.

In his remaining claim, Vializ-Rios argues that the trial court lacked authority to impose the no contact order. Vializ-Rios' Brief at 20-23. We agree, as in *Merced*, we held that "trial courts do not have statutory authority to impose conditions on a state sentence," and vacated a no contact order. *Merced*, 308 A.3d at 1284.

The Commonwealth maintains that the claim is moot, as the trial court amended its order on May 16, 2024, to strike the no contact provision. We agree. *See Commonwealth v. James*, 46 A.3d 776, 781 (Pa. Super. 2012) ("Because the trial court corrected the patently erroneous sentencing order, [this sentencing] issue is moot.").[3]

Judgment of sentence affirmed.

_____

[3] The trial court presumably corrected the sentence pursuant to its inherent authority to correct a patently illegal sentence. *See Commonwealth v. Holmes*, 933 A.2d 57, 65 (Pa. 2007) (recognizing the "inherent power of a court to correct obvious and patent mistakes in its orders, judgments and decrees" even after a notice of appeal has been filed). A trial court lacks statutory authority to impose a no contact order when the offender is committed to a state correctional facility, as that authority rests solely with the Pennsylvania Department of Corrections ("DOC") and the Board of Probation and Parole ("PBPP"). *See* 61 Pa.C.S. § 6132(a)(3); *Commonwealth v. Coulverson*, 34 A.3d 135, 141 (Pa. Super. 2011); *see also Commonwealth v. Merced*, 308 A.3d 1277, 1284 (Pa. Super. 2024) (holding that because appellant was sentenced to more than two years of incarceration, "the authority to impose a non-contact provision as part of [a]ppellant's state incarceration rested with the Pennsylvania DOC[, and that t]he PBPP would likewise have the authority to set any similar constrains during [a]ppellant's parole"). We find that the trial court possessed inherent authority to correct this obvious mistake. *See Holmes*, 933 A.2d at 66-67 ("[I]t is the obviousness of the illegality, rather than the illegality itself, that triggers the court's inherent power.").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/28/2025