J-S78008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER MUMMERT, | |
| Appellant | No. 1748 WDA 2015 |

Appeal from the Judgement of Sentence Entered September 30, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001295-2010

BEFORE:  BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED DECEMBER 7, 2016**

Appellant, Christopher Mummert, appeals from the judgment of sentence of 2-8 years' incarceration, imposed following the revocation of his probation imposed for two sexual offenses.  Specifically, Appellant contends that the sentencing court erred by increasing the length of his sentence following the granting of his post-sentence motion (PSM).  After careful review, we affirm.

The sentencing court summarized the pertinent factual and procedural history of this case as follows:

> In 2010, [Appellant] was charged with Statutory Sexual Assault, Aggravated Indecent Assault, Indecent Assault, and Corruption of Minors, for alleged sexual acts with D.B., a female juvenile born [in] March [of] 1996.  On February 22, 2011,

---

[*] Former Justice specially assigned to the Superior Court.

[Appellant] pled guilty to Statutory Sexual Assault [("Count 1")] and Unlawful Contact with Minors (reduced from Aggravated Indecent Assault) [("Count 2")].  On June 14, 2011, the trial court sentenced [Appellant] on Count 1 to a term of imprisonment of one year less a day to two years less a day, with no eligibility for "good time" (early release); and on Count 2, to five years['] County probation, consecutive to Count 1.

By Order dated April 10, 2012, the trial court granted [Appellant]'s unopposed Motion for House Arrest, with the following conditions:

(1) [Appellant] shall not use a computer, smart phone, or any device that provides internet access at any time.

(2) [Appellant] shall continue with counseling at least one time per week.

(3) [Appellant] is not permitted to be employed for a period of at least three months.

(4) [Appellant] is also DIRECTED to follow all conditions established by the House Arrest Coordinator.

(5) If [Appellant] fails to comply with all conditions, his House Arrest shall be terminated and [Appellant] shall be returned to the Cambria County Prison to serve the remainder of his sentence.

[Order, 4/10/12, at 1 (single page)].  [Appellant] served his sentence on house arrest from April 17, 2012 to June 13, 2012, the end of his minimum sentence.  [Appellant]'s maximum sentence of imprisonment ended on June 14, 2013, [ending his term of parole,] at which time he began his five-year term of probation.

In May [of] 2015, [Appellant]'s Cambria County Probation Officer, Carla Templeton, received information from the Megan's Law Tip Line regarding [Appellant]'s alleged internet activity with a minor.  Officer Templeton investigated the tip and learned that [Appellant] had moved without registering his new address; had a cell phone, internet access, and email access; and had been employed at Best Buy, an electronics department store.  On May 27, 2015, Officer Templeton filed a Petition for Probation/Parole Violation Hearing.

On June 5, 2015, the trial court conducted a Probation/Parole Violation Hearing, during which [Appellant]'s mother, Sherri Nicoletti, confirmed that she removed [Appellant] from her home after she caught him accessing the internet. Further, [Appellant] admitted that he changed his address without properly notifying the Pennsylvania State Police. [Appellant] testified that he believed his internet restriction applied only to his term of house arrest from April 17, 2012 through June 13, 2012. The trial court agreed that the Order dated April 10, 2012 was "somewhat ambiguous" regarding internet usage after expiration of [Appellant]'s house arrest, but noted that there was "no ambiguity about [Appellant] not being permitted to have contact with a minor over the internet." On June 8, 2015, the trial court issued an Order finding [Appellant] "to be in technical violation of his parole for his failure to report a change of address with the Pennsylvania State Police" and continuing his sentencing pending a hearing on the merits regarding the "allegations that [Appellant] had inappropriate internet contact with a minor."

On June 16, 2015, the trial court conducted a hearing on the merits. The Commonwealth failed to provide information regarding identification of the Megan's Law tip provider or evidence to establish the age of the person [Appellant] contacted via the internet. Following hearing, the trial court entered an Order reaffirming [Appellant]'s technical parole violation for failure to report his change of address and resentencing [Appellant] to immediate re-parole without credit for time on parole before the violation. Additionally, the trial court prohibited [Appellant] from using electronic devices with internet capabilities for six months; prohibited [Appellant]'s employment by any electronics store; directed [Appellant] to cancel his cell phone service within seven days; allowed the Probation Office to regularly check [Appellant]'s cell phone; and ordered [Appellant] to continue weekly counseling.

On August 6, 2015, the trial court conducted a Review Hearing after receiving information that [Appellant] violated his probation. Officer Templeton testified that she confiscated [Appellant]'s cell phone and found text messages to two females from late July 2015. First, [Appellant] exchanged text messages with "Alexis," including discussions about Alexis "hitting puberty" and about her grandmother being "in denial that she has hit puberty." Second, [Appellant] exchanged text messages with "Me Too from Bucks County," whom [Appellant] (age 26)

acknowledged was at least 10 years his junior. In both conversations, [Appellant] referenced "sexually explicit matter[s]" and exchanged nude pictures of genitalia. Further, [Appellant] performed numerous Internet searches for "Bucks County" and told "Me Too" he "was soon going to have a job and he would have gas money and he would come and see them." Both Officer Templeton and Ms. Nicoletti identified the phone as belonging to [Appellant].

[Appellant]'s own evidence also supported a parole violation. [Appellant] presented a letter from Dr. Mary Berge and Associates dated August 5, 2015, indicating that Defendant was engaging in "regular counseling sessions" and was "doing well[,]" but "has continued to engage in behaviors that put him at risk for further offense, such that this information has been communicated to his probation officer." The trial court found that [Appellant] violated the terms of his parole and revoked his parole, remanding him to the Cambria County Prison to serve the remainder of his time, with no credit for time served on parole prior to revocation.

On August 17, 2015, [Appellant] filed a "Post-Sentence Motion to Modify/Clarify Sentence." On August 25, 2015, following a Post-Sentence Hearing, the trial court granted in part [Appellant]'s Motion because "[a]ll parties agree that Defendant was sentenced as a parole violator when in fact he should have been sentenced as a probation violator; therefore, [Appellant] will be resentenced on the *probation* violation." Additionally, the trial court granted [Appellant]'s request to postpone his probation violation resentencing.

On September 30, 2015, the trial court conducted a Probation Violation Sentencing Hearing. The trial court found that [Appellant] violated the terms of his probation, revoking his probation and resentencing him to serve two to eight years in state prison, without credit for time served on parole prior to revocation but with credit for time served since [he was] detained on the probation violation.

On October 7, 2015, [Appellant] filed a "Post-Sentence Motion to Modify Sentence." [Appellant] requested a downward modification because he believed that "a sentence [of] total confinement in the custody of the Department of Corrections is unnecessary and counter to his needs for rehabilitation" and that a maximum sentence of eight years was "excessive" and "not

tailored to him as a first-time violator." On October 13, 2015, the trial court conducted a Post-Sentence Hearing and denied [Appellant]'s request for sentence modification.

On October 30, 2015, [Appellant] filed a timely Notice of Appeal to the Superior Court of Pennsylvania. On November 2, 2015, the trial court entered an Order directing [Appellant] to file a Concise Statement of Errors Complained of on Appeal [pursuant to Pa.R.A.P. 1925(b)]. … [Appellant] timely filed his [Rule 1925(b) statement] on November 30, 2015.

Trial Court Opinion (TCO), 12/31/15, at 1-5 (footnotes and citations omitted).

Appellant now presents the following question for our review: "Whether the sentencing court erred when it increased a probation violator's term of imprisonment when it did so only after the offender filed a [PSM] to correct its initial illegal sentence[?]" Appellant's Brief at 4.

Appellant's claim challenges the discretionary aspects of his sentence.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Hoch***, 936 A.2d 515, 517–18 (Pa. Super. 2007) (citation omitted). Moreover,

[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

> **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa.Super.2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Sierra**, **supra** at 912-13.

> As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. **Commonwealth v. Malovich**, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. **Id.**

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010).

Instantly, Appellant preserved his claim in a PSM, filed a timely notice of appeal, and provided a Rule 2119(f) statement in his brief. We also recognize that Appellant's claim, that the court's sentence was the product of vindictiveness, presents a substantial question for our review. **See**

*Commonwealth v. Tapp*, 997 A.2d 1201, 1203 (Pa. Super. 2010) (concluding that "alleging judicial vindictiveness … constitute[s] a substantial question mandating appellate review"). Accordingly, we turn to the merits of his claim.

A vindictive sentence constitutes an abuse of a sentencing court's discretion because it arises out of "partiality, prejudice, bias or ill will." *Hoch*, 936 A.2d at 518. This Court has recognized that "[w]here a subsequent sentence imposes a greater penalty than previously was imposed, a presumption of vindictiveness attaches." *Commonwealth v. Serrano*, 727 A.2d 1168, 1170 (Pa. Super. 1999). "In order to overcome the presumption of vindictiveness, the sentencing court's reasons must be based upon objective information which justifies the increased sentence." *Id.*

Appellant asserts that there is a presumption of vindictiveness with regard to the sentence imposed on September 30, 2015 (hereinafter, "second VOP[1] sentence"), given that it vastly exceeded the sentence imposed on August 6, 2015 (hereinafter, "first VOP sentence"), and because the sentencing court only increased his sentence after he had exercised his right to further review through his August 17, 2015 PSM. Moreover,

_____

[1] Violation of Probation/Parole.

- 7 -

Appellant contends the court lacked, or otherwise failed to assert, an objective basis for increasing his sentence.

We first must ascertain whether a presumption of vindictiveness applies in this case. Appellant's first VOP sentence was to serve the time remaining on his original sentence prior to when he was paroled. Appellant was sentenced on June 14, 2011 to just less than 1-2 years' incarceration. Had Appellant served his minimum sentence, his remaining time would have been, at most, one year. However, because Appellant was effectively paroled a few months earlier, when he was granted house arrest, it is estimated by Appellant that his first VOP sentence imposed a term of incarceration of approximately 14 months. That sentence is substantially less that the second VOP sentence of 2-8 years' incarceration. Accordingly, we agree with Appellant that a presumption of vindictiveness applies to the second VOP sentence currently under review.

Appellant also asserts that "[t]here was no objective basis or change of circumstances to justify the court increasing the term of imprisonment." Appellant's Brief, at 23. Appellant contends that "there was no change in circumstances based on [his] conduct, since he was incarcerated the entire time on the violation." *Id.* He also alleges that no additional facts concerning the probation/parole violation itself were discovered in the interim.

We disagree. Appellant is correct that the factual basis for his sentence did not change, in terms of the nature of his violations or issues

concerning his amenability to rehabilitation. However, the objective basis for the increase in his sentence is immediately apparent from the record, and arises out of the distinction between parole and probation.

> As commonly defined, probation is "[a] sentence imposed for commission of crime whereby a convicted criminal offender is released into the community under the supervision of a probation officer in lieu of incarceration." BLACK'S LAW DICTIONARY, 835 (6th ed. 991). Conversely, parole is the "[r]elease from jail, prison or other confinement after actually serving part of the sentence. Conditional release from imprisonment which entitles parolee to serve remainder of his term outside the confines of an institution, if he satisfactorily complies with all terms and conditions provided in [the] parole order." *Id.* at 770. As is relevant, a court faced with a violation of probation may impose a new sentence so long as it is within the sentencing alternatives available at the time of the original sentence. 42 Pa.C.S. § 9771(b) ("Upon revocation [of probation] the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation."). In contrast, a court faced with a parole violation must recommit the parolee to serve the remainder of the original sentence of imprisonment, from which the prisoner could be reparoled. *See Commonwealth v. Fair*, 345 Pa. Super. 61, 497 A.2d 643, 645 (1985) ("The power of the court after a finding of violation of parole in cases not under the control of the State Board of Parole is 'to recommit to jail....' There is no authority for giving a new sentence with a minimum and maximum.") (internal citation omitted)).

*Commonwealth v. Stafford*, 29 A.3d 800, 803 n.5 (Pa. Super. 2011) (quoting *Commonwealth v. Holmes*, 933 A.2d 57, 59 (Pa. 2007).

Thus, under the framework of a parole violation, the sentencing/VOP court was limited to sentencing Appellant to a maximum term equal to the time remaining on his original sentence at the time he was paroled. *See id.*

That is precisely the nature of the first VOP sentence in this case, as the VOP court sentenced Appellant to serve the remainder of his time left on his original sentence prior to his parole. However, no such constraint applies to a sentence imposed for a violation of probation, where the maximum possible penalty is the statutory maximum for the underlying offenses, less any time-served.

Appellant does not now dispute, and it was undisputed at the time of the second VOP sentence, that the VOP court could not sentence him for a violation of parole, because Appellant had already completed his parole prior to committing the new violations. Thus, Appellant violated his probation, not his parole. Accordingly, all "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S. § 9771(b).

Thus, while no circumstance related to the facts underlying Appellant's violation or new facts concerning his amenability to rehabilitation emerged between the first and second VOP sentences, the range of permissible sentences available to the court changed dramatically. The VOP court, constrained by a maximum sentence of 14 months' incarceration when it mistakenly considered Appellant to have violated his parole, was later confronted with a maximum sentence of 4-8 years' incarceration. The court ultimately did not impose the maximum possible sentence, settling instead for a term of 2-8 years' incarceration.

Appellant argues that the VOP court never "lament[ed] that it was unable to sentence [him] to [a] state prison" sentence at the August 6, 2015 hearing. Appellant's Brief, at 23. Appellant further avers that at that same hearing, "the court believed that county imprisonment was sufficient to address the violation and stated nothing to the contrary." *Id.* at 24.

We do not view the VOP court's failure to lament its sentencing limitations when considering the first VOP sentence as dispositive to our review of whether there was an objective basis for imposing the second VOP sentence. Appellant essentially contends that the VOP court should have expressed discontent with the existing legal framework in order to justify a different sentence, under a different legal framework, at a later time. We find this line of argument unpersuasive. Moreover, in our review of the August 6, 2015 hearing, we find nothing in the court's statements indicating that it believed the first VOP sentence was 'sufficient' punishment for Appellant's violations. To the contrary, the court sentenced Appellant to the maximum possible term allowable under the law governing parole.

Furthermore, Appellant points to nothing of record demonstrating that the VOP court acted with actual vindictiveness, partiality, prejudice, bias or ill will, and our own review of the record fails to uncover evidence of such, despite the fact that we are compelled to find a presumption of vindictiveness in light of existing case law given the strange sequence of events at issue. We are satisfied that an objective basis overcoming the presumption of vindictiveness is readily apparent, as the range of

permissible sentences changed dramatically with regard to the first and second VOP sentences.

Finally, we acknowledge Appellant's counsel's dilemma, which he characterizes as a Hobson's choice between bringing to light a clear legal error in the first VOP sentence, versus his duty to minimize his client's exposure to a longer sentence. However, we note that the illegality of the first VOP sentence could have been challenged by the Commonwealth, or even corrected by the court *sua sponte* within 30 days of its imposition. In any event, counsel's ethical dilemma is wholly collateral to whether the court abused its discretion in imposing the second VOP sentence.

Judgement of sentence **affirmed**.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/7/2016