**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 17 WAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered July 7, 2021 |
| | : | at No. 1032 WDA 2020, reversing |
| v. | : | the Order of the Court of Common |
| | : | Pleas of Washington County |
| | : | entered September 10, 2020 at No. |
| RODNEY STERLING MCGEE, | : | CP-63-CR-0002358-1994, and |
| | : | remanding. |
| Appellant | : | |
| | : | ARGUED: April 19, 2023 |

## OPINION

**CHIEF JUSTICE TODD**                    **DECIDED: SEPTEMBER 28, 2023**

We granted appeal in this matter to consider whether the Superior Court erred in holding that a trial court lacks jurisdiction to correct a patent and obvious error in a sentencing order when the defendant's request for correction is filed outside the time limitations of the Post Conviction Relief Act ("PCRA").[1]  For the following reasons, we affirm.

On November 5, 1994, Appellant Rodney Sterling McGee[2] fatally assaulted Barry Williams.  Appellant also assaulted the victim's daughter, Donna Lee Williams (hereinafter, "Donna"), who suffered numerous skull fractures.  Following the assaults, Appellant kidnapped the victim's wife, Patricia Williams (hereinafter, "Patricia"), forcing

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[2] Although this is Appellant's name as reflected in the docket, at his plea hearing, Appellant indicated that his full name is Rodney Sterlinglee McGee.

her into a police vehicle. After driving a brief distance, Appellant stopped the vehicle in the parking lot of a nearby bar and dragged Patricia inside, at which time she escaped. Appellant returned to the parking lot and kidnapped two other women, Twyla Chambers and Beth Ann Ross, fleeing in Ross's vehicle. After driving approximately two miles, Appellant stopped the vehicle and the women escaped. Appellant, still in Ross's vehicle, fled the scene, and eventually was apprehended.

On March 27, 1996, Appellant entered into a negotiated guilty plea to one count of criminal homicide[3]; one count of attempted homicide (Donna)[4]; two counts of aggravated assault (one each against Donna and Patricia)[5]; four counts of kidnapping (two against Patricia, one each against Chambers and Ross)[6]; and two counts of theft by unlawful taking.[7] Following Appellant's plea, the trial court, the Honorable Thomas D. Gladden, orally imposed the following sentence: 10 to 20 years for criminal homicide; a consecutive term of 10 to 20 years for the aggravated assault of Donna; a concurrent term of 5 to 10 years for the attempted homicide of Donna; a consecutive term of 10 to 20 years for the aggravated assault of Patricia; a consecutive term of 2½ to 5 years for the kidnapping of Patricia; and five concurrent sentences of 2½ to 5 years on the remaining three kidnappings and two theft offenses. N.T. Hearing, 3/27/1996, at 31-32. The court stated that Appellant's aggregate sentence for all of the offenses was 32½ to 65 years.

On the same day that Appellant entered his plea and the trial court orally imposed the above sentence, the trial court issued a three-page typed document titled "Order" ("typed sentencing order"). The typed sentencing order, dated March 27, 1996, indicated

---

[3] 18 Pa.C.S. § 2501.

[4] 18 Pa.C.S. § 901.

[5] 18 Pa.C.S. § 2702(a)(1).

[6] 18 Pa.C.S. § 2901.

[7] 18 Pa.C.S. § 3921.

that the trial court "will accept" Appellant's guilty plea and imposed, *inter alia*, a sentence of 10 to 20 years for criminal homicide, two consecutive sentences of 10 to 20 years for the aggravated assaults of Patricia and Donna, a concurrent term of 5 to 10 years on the charge of attempted murder of Donna; a consecutive term of 2½ to 5 years for the kidnapping of Patricia; and five concurrent sentences of 2½ to 5 years each for the kidnappings of Patricia (second offense), Twyla, and Beth, and the two theft offenses. Order, 3/27/1996, at 1. The typed sentencing order also specified that Appellant's aggregate term of imprisonment was 32½ to 65 years. In short, it was wholly consistent with the sentence the trial court orally imposed on the record. The official date stamp on the typed sentencing order indicates that it was filed on March 28, 1996.

Finally, we note that the original record in this case contains a one-page, pre-printed form titled "Sentence," also dated March 27, 1996, that contains handwritten notations by the trial court imposing, *inter alia*, a sentence of 10 to 20 years for criminal homicide; two consecutive terms of 10 to 20 years for aggravated assault; and a consecutive term of 2½ to 5 years for kidnapping. Notably, this order ("handwritten sentencing order") did not provide for a concurrent sentence of 5 to 10 years for the attempted murder of Donna, nor did it provide for additional concurrent sentences of 2½ to 5 years for the kidnappings of Twyla Chambers and Beth Ross, or Patricia (second offense), or the two theft offenses. The handwritten sentencing order does indicate, however, that Appellant's aggregate sentence was 32½ to 65 years. There is no date stamp on the handwritten sentencing order to indicate when it was filed. Appellant did not appeal his judgment of sentence.

Decades later, on June 3, 2020, Appellant filed a *pro se* PCRA petition, and counsel was appointed. On August 5, 2020, Appellant, through his counsel, filed in the court of common pleas a "Motion to Correct Illegal Sentence" ("Motion"), asserting that,

in the course of counsel's representation, counsel discovered the handwritten and typed sentencing orders, and arguing that there is an obvious incompatibility between the two orders because the typed sentencing order imposed a concurrent sentence of 5 to 10 year for the attempted murder of Donna, whereas the handwritten sentencing order did not, and, further, that the offenses of attempted murder and aggravated assault of Donna should have merged for sentencing purposes.

Following a hearing, the trial court, the Honorable Gary Gilman, granted Appellant's motion, and vacated the concurrent 5-to-10-year sentence imposed for the attempted murder of Donna, as set forth in the typed sentencing order. In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court reasoned that courts have the inherent authority to correct orders that are "patently erroneous" and "contrary to common sense." Trial Court Opinion, 10/13/2020, at 2. The court further opined that its "inherent jurisdiction . . . to correct patent and obvious mistakes" is "not barred by traditional time limits," such as those applicable to PCRA petitions. *Id.* at 3. Finally, the court explained that "challenges to an illegal sentence can never be waived and may be raised *sua sponte*" by the court. *Id.*

Finding that the orders in question were "patently erroneous" and "contrary to common sense," the trial court concluded that amendment of the orders was proper, as the time limits of the PCRA did not apply. The trial court further determined that, because the crimes of aggravated assault and attempted homicide merge for purposes of sentencing, the trial court's imposition, in the typed sentencing order, of a sentence on both crimes was illegal, and, therefore, Appellant's sentence for the attempted murder of Donna must be vacated, as both Appellant and the Commonwealth understood the primary offense to be aggravated assault. The Commonwealth appealed the trial court's decision to the Superior Court, asserting that the trial court did not have jurisdiction to

entertain Appellant's Motion because the underlying claim was cognizable under the PCRA, and had been filed outside the PCRA's jurisdictional time constraints.

In a unanimous memorandum opinion, the Superior Court reversed. *See Commonwealth v. McGee*, 1032 WDA 2020 (Pa. Super. filed July 7, 2021). In doing so, the court first observed that the PCRA allows criminal offenders to seek collateral relief when convicted of crimes they did not commit, or when serving illegal sentences, and, further, that when an action is cognizable under the PCRA, the PCRA is the "sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose." *Id.* at 4 (quoting 42 Pa.C.S. § 9542) (emphasis omitted).[8] Accordingly, the court held that the trial court was required to treat Appellant's Motion as a petition under the PCRA. *Id.* at 7 (citing *Commonwealth v. Guthrie*, 749 A.2d 502 (Pa. Super. 2000)). Finding that Appellant's Motion was filed outside the PCRA's one-year deadline, and that Appellant failed to plead and prove any exceptions to the PCRA's time requirements, the Superior Court held the trial court did not have jurisdiction to grant relief.[9]

---

[8] Section 9542 of the PCRA provides, in part:

> This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including *habeas corpus* and *coram nobis*.

42 Pa.C.S. § 9542.

[9] Section 9545(b) provides, in relevant part:

> Time for filing petition.--
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final,

(continued…)

The Superior Court acknowledged that this Court, in *Commonwealth v. Holmes*, 933 A.2d 57 (Pa. 2007), recognized a trial court's "inherent power to correct patent errors despite the absence of traditional jurisdiction" when we "created a narrow exception" to the 30-day time limitation for modifying or rescinding court orders prescribed by 42 Pa.C.S. § 5505.[10] *McGee*, 1032 WDA 2020 at 4 (quoting *Holmes*, 933 A.2d at 65). However, the Superior Court noted that, in *Commonwealth v. Jackson*, 30 A.3d 516 (Pa. Super. 2011), it interpreted *Holmes* in the specific context of an untimely PCRA petition, and found that, while "*Holmes* . . . recognized the limited authority of a trial court to correct patent errors in sentences absent statutory jurisdiction under section 5505[,] it did not establish an alternate remedy for collateral relief that sidesteps the jurisdictional requirements of the PCRA." *McGee*, 1032 WDA 2020 at 5 (quoting *Jackson*, 30 A.3d at 521). Thus, in the instant case, the Superior Court reversed the trial court's order vacating Appellant's sentence for attempted murder, and remanded for reinstatement of that portion of Appellant's sentence.

Appellant filed a petition for allowance of appeal with this Court, and we granted review to consider whether the Superior Court's application of its holding in *Jackson* for the proposition "that a trial court's inherent jurisdiction to correct patent and obvious mistakes in its records and orders is subject to the time-bar provisions of the PCRA" conflicts with this Court's holding in *Holmes*. *Commonwealth v. McGee*, 276 A.3d 701

---

unless the petition alleges and the petitioner proves
[one of three enumerated exceptions.]

42 Pa.C.S. § 9545(b).

[10] Section 5505, titled "Modification of orders," provides: "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S. § 5505.

(Pa. 2022) (order).  As the question of whether a court has jurisdiction to grant relief is a question of law, our standard of review is *de novo*.  *Holmes*, 933 A.2d at 65.

By way of background, *Holmes* was a consolidated appeal of two cases, the first involving Christopher Holmes.  Holmes had committed a parole violation, for which he could be sentenced only to serve the balance of his original sentence.  The trial court, however, sentenced him as if he had violated his probation, as opposed to parole, and imposed a new sentence of 3 to 6 years incarceration, to run concurrently to any sentence Holmes was serving for unrelated crimes.  When it realized its error, the trial court *sua sponte* vacated the sentence, despite the fact that more than 30 days had elapsed since its imposition.  The Commonwealth appealed, asserting that the trial court lacked jurisdiction to correct or vacate its prior sentence once the 30-day period prescribed in Section 5505 expired.

The Superior Court reversed, observing, *inter alia*, that the trial court's vacatur of Holmes' sentence more than 30 days after the imposition thereof was impermissible under Section 5505.  The court acknowledged that challenges to the legality of sentence cannot be waived, and may be raised by a court *sua sponte*, but reiterated that jurisdiction is a prerequisite to the court's ability to address the illegality.  In rejecting Holmes' assertion "that the trial court had inherent jurisdiction to correct patent and obvious errors in orders," the court distinguished this Court's prior decisions in *Commonwealth v. Jones*, 554 A.2d 50 (Pa. 1989) (approving a trial court's correction of an illegal sentence the same day it was imposed), and *Commonwealth v. Cole*, 263 A.2d 339 (Pa. 1970) (approving the trial court's correction of an order more than three months after its entry because it was internally inconsistent, providing for both a grant of a new trial and the arrest of judgment), explaining that "the order sentencing Holmes was neither 'facially

self-contradictory or irreconcilable nor did it contain a clerical error.'" *Holmes*, 933 A.2d at 60-61 (citation omitted).

On appeal to this Court, Holmes argued, *inter alia*, that the trial court acted within its power to correct the patent and obvious mistake of imposing a new higher sentence, rather than recommitting him to serve the remainder of his original sentence. In response, the Commonwealth reiterated its position that the trial court lost jurisdiction when the 30-day period prescribed in Section 5505 expired. Recognizing that a claim of an illegal sentence can never be waived, the Commonwealth argued that a court must first have jurisdiction to address it, and the only method by which the trial court could have obtained jurisdiction was through the PCRA. The Commonwealth also suggested that Holmes misinterpreted our decisions in *Cole* and *Jones* as suggesting that trial courts have inherent power to correct illegal sentences at any time because (1) there was no jurisdictional question in *Jones* because the court acted immediately to correct the erroneous sentence, and (2) *Cole* was distinguishable because it involved an obvious clerical error apparent from the face of the order.

The other appeal in *Holmes* involved Rufus Whitfield, who pled guilty to theft and was sentenced to 11½ to 23 months incarceration; no term of probation was imposed. Subsequently, Whitfield was convicted on a separate charge, and, at the sentencing hearing, the trial court erroneously entered an order revoking Whitfield's "probation." Whitfield filed a motion to vacate the sentence, arguing it was illegal because no probation had been imposed for the theft offense. The court denied the motion and Whitfield appealed to Superior Court. While the appeal was pending, the trial court entered an order vacating the sentence on the ground that it was illegal, and Whitfield withdrew his appeal. The Commonwealth appealed, asserting the trial court did not have jurisdiction to vacate its sentence while Whitfield's appeal was pending. Relying on *Cole* and

*Commonwealth v. Klein*, 781 A.2d 1133 (Pa. 2001) (holding that trial court had jurisdiction to correct a manifest error in the calculation of sentence notwithstanding a pending appeal), the Superior Court affirmed, concluding that "the [trial] court's correction was authorized by the legal necessity of rectifying a patent illegality." *Holmes,* 933 A.2d at 64 (citation omitted).

The Commonwealth, on appeal to this Court, argued that the alleged illegality was not comparable to the clerical errors under *Cole* and *Klein,* and that the Superior Court erred in holding that a court may correct an illegal sentence at any time. Additionally, the Commonwealth averred that, not only had the 30-day period for correction of orders under Section 5505 expired, but the court had been divested of jurisdiction when Whitfield appealed to the Superior Court. Finally, the Commonwealth asserted that the PCRA was the sole means by which Whitfield could obtain relief.

In response, Whitfield argued that the imposition of a sentence for violation of non-existent probation was an obvious and patent error, which the trial court had inherent jurisdiction to correct. He further challenged the Commonwealth's contention that the error was not an obvious or patent mistake, emphasizing that notations in the Quarter Session file, which was part of the certified record, demonstrated that no probationary period was imposed. Finally, citing *Cole* and *Klein*, Whitfield averred that statutory jurisdictional requirements must yield to the inherent power of courts, and he suggested that public policy demands that trial courts be permitted to correct erroneous sentences in order to avoid squandering judicial resources when a petitioner would ultimately be entitled to relief under the PCRA.

Upon review, this Court observed that "[t]he trial courts in both cases . . . clearly lacked jurisdiction, absent the exercise of the rarely used power of the courts to correct patent errors." *Holmes*, 933 A.2d at 65. We further noted that, "[w]hile the causes of the

two trial courts' lack of jurisdiction are undeniably distinct," both implicated Section 5505, and we stated:

> both cases fall within the limited class of cases amenable to the exercise by a trial court of the inherent power to correct patent errors despite the absence of traditional jurisdiction. As we have in the past, we hold today that the limits of jurisdiction enshrined in Section 5505 do not impinge on that time-honored inherent power of courts.

*Id.* (citing *Klein,* 781 A.2d 1133; *Cole,* 263 A.2d at 341).

Finally, we determined that both Holmes and Whitfield were entitled to relief:

> Holmes's sentencing order, like the order in *Cole,* contained a patent mistake, a fact apparent from a review of the docket without resort to third-party information. The order stated, "parole is hereby revoked," and then sentenced Holmes to serve "Not less than three (3) years nor more than six (6) years in the State Correctional Institution, to run concurrently with any sentence now serving." . . . The Commonwealth has not disputed that the sentence imposed was in direct conflict with the longstanding precedent that a parole violator cannot be sentenced to a new sentence but instead can only be recommitted to the remainder of the original sentence. . . . There is no dispute that Holmes's original sentence entailed a maximum of twenty-three months of incarceration. Considering that the error of the sentence was clear from the order and the docket sheet, the trial court properly exercised its inherent power to correct the mistake.
>
> Similarly, . . . Whitfield is entitled to the relief granted by the trial court under our caselaw upholding the inherent jurisdiction of courts to correct patent and obvious mistakes. The trial court imposed a new sentence of incarceration on Whitfield for a violation of probation even though probation was never imposed. While the mistake is not apparent based on the face of the order itself, one need only look to the Quarter Session notes in the record to see the mistake.

*Id.* at 66.

Notwithstanding the above, we cautioned that:

> [a]lthough the defendants before this court warrant relief under the inherent power of courts to correct patent errors, we

must also emphasize the limits of this power. This exception to the general rule of Section 5505 cannot expand to swallow the rule. In applying the exception to the cases at bar, we note that it is the obviousness of the illegality, rather than the illegality itself, that triggers the court's inherent power. Not all illegal sentences will be amenable to correction as patent errors. Moreover, the inherent power to correct errors does not extend to reconsideration of a court's exercise of sentencing discretion. A court may not vacate a sentencing order merely because it later considers a sentence too harsh or too lenient. . . . These cases involve clear errors in the imposition of sentences that were incompatible with the record, as in *Whitfield,* or black letter law, as in *Holmes.*

*Id.* at 66-67.

Notably, former Justice Eakin filed a dissenting opinion, contending that, unlike the errors in *Cole* and *Klein*, the error in Whitfield's sentencing order was not facially contradictory or illegal, nor was it clerical or patent. He further opined that the majority's observation that "one need only look to the Quarter Session notes in the record to see the mistake," demonstrated that "it is *not* a patent mistake – it is a mistake which requires inquiry into the record, far beyond the face of the order." *Holmes*, 933 A.2d at 72 (Eakin, J., dissenting) (emphasis original; citation omitted).

Several years after our decision in *Holmes*, the defendant in *Jackson* pled guilty to burglary and related charges and was sentenced to 20 years probation. Approximately six years later, Jackson violated his probation, and, in 1988, following a probation violation hearing, the trial court revoked Jackson's probation and sentenced him to 2 to 20 years incarceration, to be served consecutively to other sentences Jackson was serving. Jackson's subsequent appeal to the Superior Court was denied, as was his petition for further review by this Court. Thereafter, in 2010, Jackson filed a motion to correct illegal sentence, asserting that the sentence he received for violating his probation was illegal under 42 Pa.C.S. § 9754(a) because it did not specify "the authority that shall conduct the supervision." *Jackson*, 30 A.3d at 518. Treating Jackson's motion as a PCRA petition,

the PCRA court dismissed it as untimely. On appeal to the Superior Court, Jackson conceded that (1) his petition was untimely, and (2) the PCRA court lacked statutory jurisdiction to consider his claim. He argued, however, that his claim involved a challenge to the legality of his original sentence as a violation of black letter law, and, therefore, the PCRA court had authority to consider his claim under its inherent jurisdiction to correct patent errors in sentences.

The Superior Court affirmed the dismissal of Jackson's PCRA petition, noting that, where an action is cognizable under the PCRA, the PCRA provides the sole means of obtaining collateral relief. *Id.* The court further observed that the time limitations of the PCRA are jurisdictional, and a court has no authority to consider the merits of untimely petitions unless an exception has been pled and proven. *Id.* at 519. The court acknowledged, however, that this Court has upheld "the inherent authority of trial courts to correct patent mistakes in sentences despite the absence of statutory jurisdiction" at least in the context of 42 Pa.C.S. § 5505. *Id.* (citing *Cole,* 263 A.2d at 341).

Nevertheless, the Superior Court found Jackson's reliance on *Holmes* to support his claim that the PCRA court had jurisdiction to consider his claim unavailing for two reasons. First, the Superior Court opined that, contrary to the sentences at issue in *Holmes*, "there was no error in Jackson's sentence, let alone a patent and obvious illegality." *Id.* at 521. Second, the court determined that, "even if there was an obvious illegality in Jackson's sentence, the PCRA court would not have had jurisdiction to consider Jackson's claim," as this Court in *Holmes* "recognized the limited authority of a trial court to correct patent errors in sentences absent statutory jurisdiction under section 5505; it did not establish an alternate remedy for collateral relief that sidesteps the jurisdictional requirements of the PCRA." *Id.*

The court elaborated:

Inherent jurisdiction has been upheld as an exception to section 5505 because section 5505 was never intended to create a strict jurisdictional deadline for correcting orders where there is an obvious illegality in the sentence. *See* [*Holmes*]. This intent is evident from the plain language of the statute. Section 5505 confers on the trial court an affirmative right to modify orders within 30 days after its entry if there is no appeal, and does not expressly limit this authority after the 30-day period has expired. Because section 5505 does not directly prohibit a court from correcting an order after the deadline, our courts have recognized a limited equitable exception to the statute that permits a trial court to correct obvious illegalities in its sentences that are not discovered within the 30-day statutory period.

Section 9545 of the PCRA is not amenable to such equitable exceptions. Section 9545 expressly states that a PCRA petition "shall be filed within one year of the date the judgment becomes final" unless one of the statutory exceptions is pled and proven. 42 Pa.C.S.A. § 9545. Our courts have strictly interpreted this requirement as creating a jurisdictional deadline. . . . Further, our courts have interpreted jurisdiction under section 9545 differently than section 5505. Unlike section 5505, section 9545 does not merely grant a court authority to consider a PCRA petition for a limited period of time; it acts to divest a court of jurisdiction once the filing period has passed. *See* [*Commonwealth v. Perrin,* 947 A.2d 1284 (Pa. Super. 2008)] (courts are without jurisdiction to consider the merits of untimely PCRA petition). Therefore, when the one-year filing deadline of section 9545 has expired, and no statutory exception has been pled or proven, a PCRA court cannot invoke inherent jurisdiction to correct orders, judgments and decrees, even if the error is patent and obvious.

*Id.* at 522-23.

Turning to the parties' arguments in the case *sub judice*, Appellant contends that the Superior Court erred in concluding that the trial court did not have jurisdiction to grant him relief. Relying on, *inter alia*, this Court's decisions in *Cole*, *Klein*, and *Holmes*, Appellant maintains that trial courts have the "inherent authority to correct patent and obvious mistakes in its records," as "evidenced by the record and/or black-letter law," notwithstanding the time constraints of the PCRA. Appellant's Brief at 10-11. Appellant

avers that the trial court in the instant case entered "two irreconcilable sentencing orders," which "cannot both be intentional." *Id.* at 28. Appellant further claims that, in light of the fact that "the hand-filled order correctly merges the two inchoate murder offenses, whereas the typewritten order does not, it is patent and obvious that the latter contains a mistake as demonstrated by its nonconformance with black-letter merger law," which the trial court had inherent authority to correct.[11] *Id.* Finally, Appellant asserts that the Superior Court erred in relying on its decision in *Jackson*, as that decision is contrary to this Court's decision *Holmes*, and, in Appellant's view, should be disapproved. *Id.* at 27.[12]

In response, the Commonwealth argues that the Superior Court properly reversed the trial court's decision. First, the Commonwealth contends that "the negotiated plea agreement here was not patently and obviously illegal." Commonwealth's Brief at 19. Referring to the dissenting opinion of former Justice Eakin in *Holmes*, the Commonwealth

---

[11] Despite Appellant's repeated references to merger principles, a concept that implicates a challenge to the legality of sentence, *see Commonwealth v. Prinkey*, 277 A.3d 554, 567 (Pa. 2022), Appellant insists that he is not raising a challenge to the legality of his sentence under Section 9543(a)(2)(vii) of the PCRA (providing relief from the imposition of a sentence greater than the lawful maximum), and, thus, the trial court's authority to correct the error was not constrained by the timeliness provisions of the PCRA. In this regard, Appellant posits that, while "there are instances in which a claim that a sentence is a mistake as evidenced by its clear illegality will lie at the same time that a claim that sentence exceeds the lawful maximum," that will not always be the case. Appellant's Brief at 19 (emphasis omitted). Appellant offers the following distinction: "the claim that the sentence is a *mistake* is predicated in its inadvertence as *evidenced* by *clear* illegality, whereas the claim that the sentence exceeds the lawful maximum is predicated on its illegality." *Id.* at 20 (emphasis original).

[12] The Defender Association of Philadelphia ("DAP") filed an *amicus* brief in support of Appellant. DAP asserts, *inter alia*, that the authority of a trial court to correct its own errors is an inherent power which exists independent of the legislature and, specifically, the PCRA. Indeed, DAP submits that this Court's reference in *Holmes* to the jurisdictional time constraints of the PCRA "equated the effects of jurisdictional divestiture under Section 5505 with jurisdictional divestiture under the PCRA." DAP's Brief at 10. DAP also suggests that the language of Section 9542 of the PCRA, which states that "[t]his subchapter is not intended to limit the availability of remedies in the trial court," is particularly apropos to the instant case, where the trial court corrected its own patent mistake in a sentencing order. *Id.* at 20 (emphasis omitted).

maintains there was no patent and obvious error in the sentencing orders in this case because, unlike the error on the face of the order in *Holmes*, "the merits of Appellant's claim are not as clear [as to what] order dictates and whether the doctrine of merger applies." *Id.* at 22. The Commonwealth further argues that the Superior Court properly relied on its decision in *Jackson* to conclude that Appellant's sole means of obtaining relief is the PCRA, as both *Jackson* and the instant case are distinguishable from *Holmes*. As the PCRA petition filed by Appellant was untimely, the Commonwealth avers that the PCRA court did not have jurisdiction to address Appellant's claim.[13]

Prior to determining whether the trial court erred in granting Appellant relief based on its inherent authority to correct patent and obvious errors in the record despite the time limitations of the PCRA, we must resolve the threshold issue of whether there is, in fact, a patent and obvious error in the record to correct. As noted above, Appellant's claim of a patent and obvious error is premised on trial court's entry of what Appellant asserts are "two irreconcilable sentencing orders," Appellant's Brief at 28, one of which provides for a concurrent sentence for the attempted murder of Donna, and one which does not. Upon review of the record in this case, we conclude there is no patent and obvious error.

As noted above, at Appellant's plea and sentencing hearing, Judge Gladden orally stated, on the record, that he was imposing, *inter alia*, a concurrent sentence of 5 to 10 years for the attempted murder of Donna. *See* N.T. Hearing, 3/27/96, at 31 ("On the

---

[13] The Office of the Attorney General ("OAG") and the Pennsylvania District Attorneys Association ("PDAA") filed *amicus* briefs in support of the Commonwealth. Both the OAG and PDAA take the position that a trial court's power to address an obvious sentencing illegality is subject to the time limits of the PCRA, and they maintain that *Holmes* did not purport to hold otherwise. PDAA further avers that Appellant's sentence is not "patently illegal" simply because the trial court failed to merge his sentences for aggravated assault and attempted murder, and it notes that, at the time Appellant's sentence was imposed, the trial court would have been required to consider the facts and elements of the offenses to determine whether they merged for sentencing purposes, and the propriety of such determination is not amenable to correction by the trial court pursuant to *Holmes*. PDAA Brief at 12-13.

charge of Criminal Attempt/Homicide against Donna Lee Williams, the defendant is sentenced to a concurrent sentence of five to ten years."). Notably, Appellant does not reference the transcript of the plea hearing. The typed sentencing order, which is dated the same day as the sentencing hearing and bears an official date stamp indicating it was filed on March 28, 1996, precisely reflects the trial judge's intended sentence as stated on the record, including the concurrent sentence of 5 to 10 years for the attempted murder of Donna.[14]

Admittedly, the handwritten sentencing order, which does not contain an official date stamp, does not reference a *concurrent* sentence of 5 to 10 years for the attempted murder of Donna. However, it also does not list the five additional *concurrent* sentences of 2½ to 5 years for the kidnappings and two theft offenses orally imposed at Appellant's sentencing hearing and listed on the typed sentencing order. Instead, in the limited space available on the pre-printed form, the trial court listed the *consecutive* sentences which resulted in Appellant's aggregate sentence of 32½ to 65 years imprisonment, a sentence which is not disputed. In our view, the trial court's abbreviated recitation of the Appellant's sentence on the handwritten sentencing order does not render the handwritten and

---

[14] We acknowledge that, in *Commonwealth v. Borrin*, 80 A.3d 1219 (Pa. 2013) (Opinion Announcing the Judgment of the Court), we explained that a "signed sentencing order, if legal, controls over oral statements of the sentencing judge not incorporated into the signed judgment of sentence," and we held that "comments the trial court made after-the-fact . . . regarding its subjective intent when sentencing [the defendant] and the sentence it meant for [the defendant] were irrelevant to the process of order clarification the trial court was authorized to undertake." *Id.* at 1226-27. As noted, however, the trial court's oral statements in the instant case were not made after-the-fact to explain its prior sentence; rather, the court described the sentence it was going to impose, which was fully consistent with the typed sentencing order.

typewritten sentencing orders "irreconcilable," nor does it evidence a patent and obvious error in the record.[15]

As we have determined that there is no patent and obvious error in the record, Appellant's claim for relief rises and falls on his assertion that the sentences for the aggravated assault and attempted murder of Donna should have merged for sentencing purposes. This is plainly a challenge to the legality of his sentence, *see Prinkey*, 277 A.3d at 567, which is subject to the time limitations of the PCRA, and it is undisputed that Appellant's Motion, if treated as a PCRA petition, was untimely.

Accordingly, and in conclusion, as there is no patent and obvious error in the trial court's sentencing orders, we hold that the trial court erred in granting Appellant relief under *Holmes*, and so we affirm the Superior Court's decision reversing the trial court's grant of relief.[16] Further, in light of our determination that there is no patent and obvious error in the record, we do not reach the question of whether a trial court's inherent authority to correct patent and obvious errors in the record is subject to the time limitations of the PCRA.[17]

Affirmed.

---

[15] Indeed, we observe that we have no way of knowing at what point during the proceedings on March 27, 1995, the handwritten sentencing order was created by the trial court, although it was included among the plea waiver forms in the original record reviewed by this Court. Further, as noted above, there is no date stamp indicating when it was filed.

[16] Notably, even if we were to find that Appellant was entitled to relief, his aggregate sentence would remain unchanged.

[17] In his dissenting opinion, Justice Wecht asserts that our decision "undermines the inherent authority" of courts to correct patent and obvious errors, and that we "fail[] to give due regard" or "adhere" to this principle. Dissenting Opinion (Wecht, J., dissenting) at 2, 13. To the contrary, as the dissent otherwise seems to recognize, *id.* at 2 (noting that, "rather than resolving the timeliness question," we find there was no error to correct); *id.* at 4 (same), we do not speak to the timeliness question. While we certainly disagree with the dissent that there was a patent and obvious error to correct in this case, our analysis ends with the threshold conclusion that there was no such error.

Justices Dougherty, Mundy and Brobson join the opinion.

Justice Wecht files a dissenting opinion in which Justice Donohue joins.