**[J-19-2023] [MO: Todd, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 17 WAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered July 7, 2021 |
| | : | at No. 1032 WDA 2020, reversing |
| v. | : | the Order of the Court of Common |
| | : | Pleas of Washington County |
| | : | entered September 10, 2020 at No. |
| RODNEY STERLING MCGEE, | : | CP-63-CR-0002358-1994, and |
| | : | remanding. |
| Appellant | : | |
| | : | ARGUED:  April 19, 2023 |

**DISSENTING OPINION**

**JUSTICE WECHT**                                **DECIDED: SEPTEMBER 28, 2023**

Under our Constitution, the courts of this Commonwealth "have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice."[1]  Included in those inherent powers is the right of a court to correct its patent errors evident on the face of an order.[2]  So innate is this power that it is not subject to enactments of the General Assembly that purport to limit it.[3]  That power lies at the heart of the case *sub judice*.

---

[1]     PA. CONST. art. V, § 1 (vesting judicial power in the Unified Judicial System); *Sweet v. Pennsylvania Labor Relations Bd.*, 322 A.2d 362, 365 (Pa. 1974).

[2]     *Commonwealth v. Holmes*, 933 A.2d 57, 65-67 (Pa. 2007) (upholding the court's inherent authority to correct patent and obvious mistakes in its orders against purported statutory limitations upon this authority).

[3]     *Id.*

The trial court in this case entered two irreconcilable sentencing orders. Upon Rodney McGee's motion, the trial court remedied this error by entering an order modifying the sentence. The Commonwealth appealed, and the Superior Court reversed. The Superior Court held that, because McGee sought relief in the trial court beyond the timeliness requirements of the Post Conviction Relief Act ("PCRA"),[4] the trial court lacked jurisdiction to provide relief. According to the Superior Court, the PCRA and its time-bar superseded the trial court's ability to correct the error under its inherent authority.[5]

Today's Majority affirms the Superior Court's wayward ruling. However, rather than resolving the timeliness question presented in this appeal, the Majority instead holds that the two sentencing orders did not actually involve a patent and obvious error that would trigger the trial court's inherent authority. In addition to resolving a question that is not before us, and doing so upon a basis advanced by neither party, the Majority's analysis undermines the inherent authority that is necessary for the judiciary to protect the integrity of the judicial process. I dissent.

On November 5, 1994, McGee fatally assaulted Barry Williams and assaulted Donna Lee Williams. McGee then kidnapped Patricia Williams, Twyla Chambers, and Beth Ann Ross. McGee was apprehended shortly after the three women escaped. On March 27, 1996, McGee entered a negotiated plea to one count of criminal homicide, one count of attempted homicide (relating to Donna), two counts of aggravated assault (one

---

[4]    42 Pa.C.S. §§ 9541-46; *id.* § 9545(b)(1) (requiring all petitions for relief be filed within one year of a judgment of sentencing becoming final, unless a timeliness exception applies).

[5]    *Commonwealth v. McGee*, 1032 WDA 2020 (Pa. Super. July 7, 2021) (non-precedential decision).

each relating to Donna and Patricia), four counts of kidnapping (two relating to Patricia, one each relating to Chambers and Ross), and two counts of theft by unlawful taking.[6]

In open court, the trial court imposed a sentence of ten to twenty years' incarceration for criminal homicide; a consecutive term of ten to twenty years' incarceration for aggravated assault (Donna); a concurrent term of five to ten years' incarceration for attempted homicide (Donna); a consecutive term of ten to twenty years' incarceration for aggravated assault (Patricia); a consecutive term of two-and-a-half to five years' incarceration for kidnapping (Patricia); and five concurrent sentences of two-and-a-half to five years' incarceration for the remaining three kidnapping offenses and two theft offenses. In the aggregate, the court sentenced McGee to thirty-two-and-one-half to sixty-five years of incarceration.

After orally announcing the sentence, the trial court entered two conflicting sentencing orders. The first order, dated March 27, 1996, was typed and was consistent with the sentence as stated on the record in open court. The second sentencing order, also dated March 27, 1996, was handwritten. Diverging from the oral and typed orders, the handwritten order omitted any concurrent sentences and instead listed only the consecutive sentences. In particular, the handwritten order imposed a sentence for the aggravated assault of Donna, and no sentence for the attempted murder of Donna.

It was not until decades later that McGee's counsel noticed this discrepancy. Invoking the trial court's inherent authority to correct patent and obvious mistakes, McGee filed a "Motion to Correct Illegal Sentence," asserting that the typed and handwritten orders were incompatible inasmuch as the typed order imposed a concurrent sentence for the attempted murder of Donna, while the handwritten order did not. McGee further argued that the handwritten order accurately reflected that the sentences for the

---

6          Maj. Op. at 2.

attempted murder of Donna and the aggravated assault of Donna merged for sentencing purposes, whereas the typed order did not. The trial court agreed, and vacated the concurrent sentence for attempted murder contained in the typed order and omitted from the handwritten order.

On appeal, the Superior Court reversed the trial court, relying upon its decision in *Commonwealth v. Jackson*[7] to hold that McGee's motion should have been considered a PCRA petition. As such, the Superior Court applied the jurisdictional time restrictions of the PCRA and held that McGee's petition was untimely.[8] We then granted review to decide whether the trial court's inherent authority to correct patent and obvious mistakes in its records and orders is subject to the time-bar of the PCRA.[9]

Rather than answering this question, the Majority instead explores the unasked question of whether there was a patent and obvious error that would trigger the court's inherent authority. Reviewing the two sentencing orders and the trial court's oral sentence, the Majority concludes that there was no such error in the orders.[10] This is so, according to the Majority, because the trial court's oral sentencing matched the typed sentencing order, whereas the handwritten order, in contrast, only included the consecutive sentences.[11] Because the handwritten order was the outlier in this universe of three, the Majority believes that there was nothing irreconcilable about the two orders. Believing that the court's inherent authority was not implicated, the Majority subjects the motion to the PCRA's time bar and affirms the Superior Court.

---

[7]     30 A.3d 516 (Pa. Super. 2011).

[8]     *See* 42 Pa.C.S. § 9545(b).

[9]     *Commonwealth v. McGee*, 276 A.3d 701 (Pa. 2022).

[10]    Maj. Op. at 15-17.

[11]    *Id.* at 16.

I cannot agree. As a preliminary and fundamental matter, the Commonwealth has never been concerned, as the Majority has proven itself to be, with the court's oral sentencing or with the fact that the handwritten order reflected only consecutive sentences. Before this Court, the Commonwealth makes no such argument. The Commonwealth focuses instead upon the timeliness of the filing and upon disputing McGee's argument that the attempted murder conviction merged with the aggravated assault conviction.[12] Because of the disagreement about merger, and for this reason only, the Commonwealth asserts that "the sentence was not patently illegal," and the trial court's inherent authority was not implicated.[13] The Commonwealth offers no other basis for its argument that there is no patent and obvious mistake. The Majority divines this line of reasoning entirely on its own. The decision to disregard the conflicting orders by focusing instead upon what the trial court said at sentencing or upon other discrepancies between the two orders is a *post-hoc* contrivance of the Majority's own making.

The Majority's resolution falls well beyond the scope of the issue before us, which unambiguously states as follows:

> Does the Superior Court's continued application herein and elsewhere of its holding in *Commonwealth v. Jackson*, 30 A.3d 516 (Pa. Super. 2011), that a trial court's inherent jurisdiction to correct patent and obvious mistakes in its records and orders is subject to the time-bar provisions of the PCRA improperly constrict trial courts' jurisdiction, improperly expand the scope of the time-bar, and/or conflict with this Honorable Court's decision in *Commonwealth v. Holmes*, 593 Pa. 601, 933 A.2d 57 (2007), which

---

[12] Commonwealth's Brief at 22 (arguing that the "merits of [McGee's] claim" are not clear because "[w]hether what order dictates and whether the doctrine of merger applies is not a patent error that the *Holmes* court contemplated to provide a court with inherent authority outside of § 5505's 30 day time period, let alone twenty-five years or more later").

[13] *Id.*

recognized that claims invoking said jurisdiction are not cognizable under the PCRA and thus not subject to the time-bar?[14]

This phrasing, of course, assumes that there was a patent and obvious mistake that implicated the trial court's inherent authority, and asks this Court to determine only if the motion invoking the trial court's inherent authority was time barred.

The Commonwealth has never denied that there is a patent and obvious mistake in the way that the Majority Opinion does. Before the trial court, the Commonwealth argued only the (un)timeliness of McGee's attempt to invoke the trial court's inherent authority in this context.[15] In the Superior Court, the Commonwealth raised two issues, and argued in both of them that "the PCRA court erred by considering McGee's motion independent of the PCRA."[16] In particular, the Commonwealth asserted that the trial court "made an error of law when it determined the issue of an illegal sentence is not a PCRA issue" and argued that "the issue of an illegal sentence is waived if not brought within the time periods [ ] set by the PCRA."[17] The Commonwealth always has focused upon the timeliness of McGee's motion, accompanied by bald assertions about merger. It has never argued that there was no patent and obvious error on the merits. Our well-trodden appellate principles demand that we deem any such argument to be waived had it been raised by the Commonwealth.[18] Yet, the Majority finds that position to be determinative.

---

[14]    *McGee*, 276 A.3d at 701.

[15]    *See* Tr. Ct. Op., 10/13/2023, at 3 (recounting the Commonwealth's timeliness argument).

[16]    Sup. Ct. Op. at 3.

[17]    *Id.* (citing Commonwealth's Superior Court Brief at 8).

[18]    *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Shabezz*, 166 A.3d 278, 288 (continued…)

Because of the Majority's wandering, I am compelled to explain the basis of my disagreement. A trial court's inherent authority is not a new phenomenon. However, the power originally did not extend to all patent and obvious errors. The broader authority we recognize today applied to clerical errors that occurred in documenting judicial proceedings in the record. For instance, in 1911, this Court in *Commonwealth v. Rusic*, recognized a court's inherent power when a trial court amended its record to reflect accurately the defendant's presence at a hearing.[19] When the defendant appealed, this Court held that the trial court had the inherent authority to correct such clerical errors and to ensure the integrity of its records.[20]

Over time, however, the authority to correct clerical errors in the record evolved to include the ability to correct patent and obvious mistakes in its orders and records. In *Commonwealth v. Cole*, the trial court entered an order granting two irreconcilable forms or relief.[21] After the thirty days within which the trial court had the authority to rescind that

---

n.6 (Pa. 2017) (observing that claims not raised before the Superior Court are waived before this Court).

[19] 79 A. 140 (Pa. 1911).

[20] *Id.* at 141 ("[T]he amendment was allowed for the purpose of making the record conform to the fact in these respects. There can be no doubt as to the power of the court to amend its record so as to make it conform to the truth, even after the term has expired."); *see also Smaltz v. Hancock*, 12 A. 464, 466 (Pa. 1888) (upholding the power of the court to set aside a six-year-old verdict that was "vague and uncertain" and "impossible of execution"); *Commonwealth v. Liscinsky*, 171 A.2d 560 (Pa. Super. 1961) (validating a trial court's authority to correct clerical errors in docket entries at any tmie); *Commonwealth v. Mount*, 93 A.2d 887 (Pa. Super. 1953) ("Clerical errors or inaccuracies in docket entries may be corrected by the trial court so that they conform to the facts.").

[21] 263 A.2d 339 (Pa. 1970).

order under the predecessor to Section 5505 of the Judicial Code, 42 Pa.C.S. § 5505,[22] the trial court entered an order partially rescinding one of the orders. When the defendant appealed, this Court rejected the argument that the trial court lacked jurisdiction to enter the second order because thirty days had lapsed. Instead, we held that the original order was "patently erroneous" because the grant of irreconcilable forms of relief was clearly antagonistic on the face of the order.[23] We upheld the trial court's authority to correct such mistakes so as to "make the order . . . speak the truth."[24] The statutory limitation upon the trial court's authority to rescind its orders was not implicated when the court was exercising this inherent authority.[25]

In *Commonwealth v. Klein*,[26] a trial court sentenced a defendant and later learned from the county prison that there had been an error in the presentence investigation report regarding how many days of incarceration the defendant already had served. The trial court entered an order directing the defendant to appear for resentencing. The defendant appealed the original sentence. At the resentencing hearing, the defendant challenged the trial court's jurisdiction to modify the original sentence due to the defendant's appeal of that sentence which he argued, under Section 5505, deprived the court of jurisdiction

---

[22]  *Id*. at 340 (citing Act of June 1, 1959 (P.L. 342, s 1, 12 P.S. § 1032)). Section 5505 provides that "[e]xcept as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S. § 5505.

[23]  *Cole*, 263 A.2d at 341.

[24]  *Id*.

[25]  *Id*. (describing the trial court's inherent authority "to correct obvious and patent mistakes in its orders, judgment and decrees.").

[26]  781 A.2d 1133 (Pa. 2001).

to modify or rescind its orders. On appeal, this Court upheld the trial court's inherent authority to correct the mistake, explaining that Section 5505 could only "be read in conjunction with a court's inherent powers 'to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or supply defects or omissions in the record.'"[27] This inherent authority allowed the trial court to correct a "patent defect or mistake in the record."[28]

The evolution continued. This Court's decision in *Holmes*[29] was a consolidated appeal involving two separate defendants. The first defendant, Holmes, was on parole when he pleaded guilty to new charges. Instead of sentencing Holmes to serve the balance of the original sentence as a parole violator, the trial court mistakenly sentenced Holmes for a violation of probation. Several years later—well beyond the thirty-days allotted by Section 5505—the trial court *sua sponte* vacated the sentence.[30] The Commonwealth appealed, arguing that the trial court lacked jurisdiction under Section 5505 to vacate the sentence.

In the companion case, Rufus Whitfield was sentenced on several charges to a term of incarceration with no probation to follow. After Whitfield was later convicted of another charge, the trial court entered an order purporting to revoke Whitfield's probation.

---

[27] *Id.* at 1135 (quoting *Cole*, 263 A.2d at 341).

[28] *Id.*

[29] 933 A.2d at 57.

[30] *Id.* at 59–60 (observing that the trial court presumably realized "that the parole violation sentence imposing three to six years of incarceration was improper because it set a minimum sentence and because its maximum exceeded the eleven and one-half to twenty-three month sentence Holmes received when sentenced for the original probation violation on September 16, 1997").

Whitfield appealed to the Superior Court, divesting the trial court of authority to modify its orders under Section 5505. Notwithstanding the appeal, the trial court determined on its own that the sentence was illegal, and entered an order vacating it. The trial court explained that it mistakenly believed that Whitfield had been on probation, but, upon obtaining the notes of testimony from the original sentencing hearing, realized its mistake. Whitfield withdrew his pending appeal, and the Commonwealth appealed the trial court's new order.

On appeal, this Court observed that both appeals implicated the trial court's authority to correct patent errors. With respect to Holmes, the Court explained that the "sentencing order, like the order in *Cole*, contained a patent mistake, a fact apparent from a review of the docket without resort to third-party information."[31] Although the order stated that parole was revoked,[32] the sentence imposed was consistent with that of a probation violation.[33] We considered this error "clear from the order and docket sheet."[34] But in *Whitfield*:

> [t]he trial court imposed a new sentence of incarceration on Whitfield for a violation of probation even though probation was never imposed. While the mistake is not apparent based on the face of the order itself, one need only look to the Quarter Session notes in the record to see the mistake.[35]

---

[31]　*Id*. at 66.

[32]　*Id*.

[33]　*Id*. (reviewing the order that sentenced Holmes to serve "[n]ot less than three (3) years nor more than six (6) years in the State Correctional Institution, to run concurrently with any sentence now serving," a sentence that the Commonwealth did not dispute "was in direct conflict with the longstanding precedent that a parole violator cannot be sentenced to a new sentence but instead can only be recommitted to the remainder of the original sentence").

[34]　*Id*.

[35]　*Id*.

Because both of these errors were patent and obvious, we held that the trial courts properly exercised the inherent power to correct the mistakes.[36] In doing so, we rejected the argument that Section 5505 somehow limited this inherent authority.[37]

To distinguish between those mistakes that are patent and obvious, and therefore fall within the trial court's inherent authority, and those that are not, we held that:

> [I]t is the obviousness of the illegality, rather than the illegality itself, that triggers the court's inherent power. Not all illegal sentences will be amenable to correction as patent errors. Moreover, the inherent power to correct errors does not extend to reconsideration of a court's exercise of sentencing discretion. A court may not vacate a sentencing order merely because it later considers a sentence too harsh or too lenient. The cases at bar are not cases where a court reconsidered the application of its sentencing discretion or its interpretation of a nuanced or ambiguous statutory provision. These cases involve clear errors in the imposition of sentences that were incompatible with the record, as in *Whitfield*, or black letter law, as in *Holmes*.[38]

In this case, there is a patent and obvious error in the two conflicting sentencing orders in the record. One order imposed a sentence for the aggravated assault of Donna and the other included sentences for the aggravated assault and attempted murder of Donna. Similar to the trial court's order in *Cole*, which entered two irreconcilable forms of relief, the trial court here entered two orders with irreconcilable terms. The irreconcilability of the two orders is a patent and obvious mistake, as both orders cannot

---

[36]     *Id.*

[37]     *Id.* at 65 ("[T]he limits of jurisdiction enshrined in Section 5505 do not impinge on that time-honored inherent power of courts [to correct patent errors].").

[38]     *Id.* at 66–67.

be accurate or intentional. Under *Holmes*, the obviousness of this illegality triggers the trial court's inherent authority.

This is so notwithstanding what the trial court announced orally at sentencing, which happened to be consistent with the typed sentencing order but was inconsistent with the handwritten order, and despite the fact that the handwritten order included only consecutive sentences. In a universe of three, the mutual consistency of two does not obviate the inconsistency of the third. Indeed, it is quite the opposite. We cannot simply ignore the third order because the other two match. The fact that the handwritten order also omitted other concurrent sentences only increases its incompatibility with the typed order. And the fact that the oral sentence is consistent with the typed order only means that the handwritten order is incompatible with the typed order *and* the oral sentence. Both of these facts lend more irreconcilability to the handwritten order, not less.

Once the mistake is identified as patent and obvious, the trial court has the inherent authority to remedy it. This is true despite the statutory limitations upon jurisdiction imposed by Section 5505 and by the PCRA. Indeed, *Holmes* already conclusively resolves this issue. Although the Commonwealth in *Holmes* challenged the trial court's inherent authority as inconsistent with Section 5505's deprivation of jurisdiction, our reasoning as to Section 5505 applies with equal force and persuasion to the PCRA's jurisdictional limitations. Section 5505 and the PCRA are both statutes that purport to extinguish a trial court's jurisdiction after a period of time has elapsed; thirty days for § 5505 and one year for the PCRA. We decided *Holmes* over the Commonwealth's argument that the PCRA was the only way for Holmes and Whitfield to obtain relief,[39] and

---

[39]     *Id.* at 64.

over Justice Eakin's insistence that the PCRA precluded relief in dissent.[40] Indeed, we phrased the issue before us as implicating "the power of courts to correct allegedly illegal sentencing orders absent jurisdiction pursuant to 42 Pa.C.S. [§] 5505 or the PCRA."[41] *Holmes* has already decided that the court's inherent authority is so deeply engrained and essential to judicial functioning that it supersedes any jurisdictional limitations imposed by statute. The Majority entirely fails to give due regard, let alone adhere, to this principle.

The Superior Court in this case relied upon *Commonwealth v. Jackson*,[42] which involved a probation revocation sentence that the trial court imposed in 1988. In 2010, Jackson filed a "motion to correct an illegal sentence," arguing that the 1988 sentence was illegal because it did not identify the agency that would supervise Jackson's probation, as the sentencing code requires.[43] The trial court considered the motion to be a PCRA petition and dismissed it as untimely. The Superior Court affirmed, offering two rationales. First, the Superior Court held that Jackson was factually incorrect, as the 1988 sentenced did, in fact, identify the supervising agency.[44] Although this conclusion ended the matter, the Superior Court continued on to its second rationale: that the trial court

---

[40]     *Id.* at 74 (Eakin, J., dissenting) (opining that, by not filing a PCRA petition, Holmes "chose to forego the only means available to correct his illegal sentence"); *but see Commonwealth v. Borrin*, 80 A.3d 1219, 1235 (Pa. 2011) (Eakin, J., dissenting) (opining that the trial court had the inherent authority to enter a new sentencing order several years after the initial order to conform to the trial court's intended, more severe sentence).

[41]     *Holmes*, 933 A.2d at 65.

[42]     30 A.3d 516 (Pa. Super. 2011).

[43]     *Id.* at 518.

[44]     *Id.* at 521.

lacked jurisdiction to entertain the motion because of the PCRA time-bar.[45] Despite this Court's decision in *Holmes*, the *Jackson* court held that there was no authority extending the trial court's inherent authority beyond the time restrictions of the PCRA.[46]

The PCRA-based rationale of *Jackson* is *dicta*, given the definitive resolution offered by the first. It was also wrong when it was decided, and wrong when the Superior Court applied it in this case. That non-binding *dicta* is patently and obviously inconsistent with *Holmes*. Contrary to the *Jackson* court's understanding, *Holmes* did, in fact, recognize that a court's inherent authority exists independently of the jurisdictional requirements of legislative enactments.

The holdings of the Superior Court in *Jackson* and in this case also are inconsistent with the authority of the judiciary as a co-equal branch of government,[47] which vests the judiciary with certain inherent judicial powers. In the context of the inherent power of federal courts, the United States Court of Appeals for the Third Circuit has explained that:

> [t]his use of inherent power, which might be termed irreducible inherent authority, encompasses an extremely narrow range of authority involving activity so fundamental to the essence of a court as a constitutional tribunal that to divest the court of absolute command within this sphere is really to render practically meaningless the terms "court" and "judicial power." In this limited domain of judicial autonomy, courts may act notwithstanding contrary legislative direction. These inherent powers are grounded in the separation of powers concept, because to deny this power and yet to conceive of courts is a self-contradiction.[48]

---

[45] *Id*. at 521-23.

[46] *Id*. at 521 (holding that *Holmes* "did not establish an alternate remedy for collateral relief that sidesteps the jurisdictional requirements of the PCRA").

[47] PA. CONST. art. V, § 1 (vesting judicial power in the Unified Judicial System).

[48] *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 562 (3d. Cir. 1985) (cleaned up).

As a matter of constitutional separation of powers, a trial court's inherent power to correct patent errors in its orders inheres in the judiciary and is not subject to legislative command. In the wake of *Holmes*, we recognized in *Commonwealth v. McMullen* that the court's inherent power could not be limited by contrary legislation.[49] In *McMullen*, the Court considered legislation limiting the punishment available to a court for indirect criminal contempt.[50] We recognized that courts maintain their own inherent power to enforce their orders by way of contempt—a right inherent in courts and incidental to the grant of judicial power under Article V of the Pennsylvania Constitution.[51] By limiting the potential penalty for contempt, the legislature had "unconstitutionally restrict[ed] the court's ability to punish for contempt."[52] As a structural consequence of the constitutional separation of powers, the legislature cannot limit the court's inherent authority.

Once there is a patent and obvious error established in a case, both the separation of powers doctrine and *Holmes* preclude a trial court's inherent authority to correct such errors from being limited by any time limitations purportedly imposed by the PCRA. The Majority simply is wrong to find that there was no such error. Not only was that issue not presented to this Court for review, but it also is clear that there was such an error. The only question upon which we granted review is whether the trial court's inherent authority is subject to the PCRA's time-bar. *Holmes* dictates that it is not. I dissent.

Justice Donohue joins this dissenting opinion.

---

[49]    961 A.2d 842 (Pa. 2008).

[50]    *See* 42 Pa.C.S. § 4136 (held unconstitutional in *McMullen*, 961 A.2d at 850).

[51]    *McMullen*, 961 A.2d at 849.

[52]    *Id.* at 850.